### RICHARD FOOTE v. THE STATE.

#### No. 1720. Decided February 21, 1912.

**1.—Incest—Relationship—Illicit Intercourse—Lawful Wedlock—Child—Presumption.**

The presumption of law is that a child born in lawful wedlock is legitimate, and there was no error upon trial of incest, in not admitting testimony to prove illicit intercourse of the mother of the female with whom defendant was charged to have had the act of incest, she being his niece. Following Simon v. State, 31 Texas Crim. Rep., 186.

**2.—Same—Rule Stated—Husband and Wife—Public Policy—Bastard.**

The mother and father will not be permitted to testify to any fact which would render children born in lawful wedlock bastards; and other witnesses can only testify to any fact or circumstance of nonaccess of the father or impotency on his part, and this should be shown by disinterested witnesses. This rule is founded upon public policy.

**3.—Same—Rule Stated—Legitimacy of Child.**

If the husband had access to the wife, the fact that she had intercourse with another and different person, is inadmissible in evidence on the question of the legitimacy of her child.

**4.—Same—Evidence—Bill of Exceptions.**

Where, upon appeal from a conviction of incest, the bill of exceptions did

not show what the testimony would have been, the same could not be considered; but besides, the testimony was inadmissible.

**5.—Same—Bill of Exceptions—Practice on Appeal.**

Where the court below refused to approve bills of exception, and defendant took no action thereto, there was nothing to review.

**6.—Same—Bill of Exceptions—Question and Answer.**

A bill of exceptions to the exclusion of questions to a witness will not be considered on appeal, unless it is shown what the reply would have been. Following Love v. State, 35 Texas Crim. Rep., 27, and other cases.

**7.—Same—Evidence—Presumption of Legitimacy—Nonaccess.**

Where, upon trial of incest, the trial court ruled that the paternity of the female with whom the incest was committed could not be impeached by any other evidence than nonaccess between her parents, there was no error in refusing to go into the question of the color of the said female.

**8.—Same—Evidence.**

Where the testimony which the defendant offered was in fact introduced as shown by the record, there was no error.

**9.—Same—Continuance—Practice on Appeal.**

Where there was no motion for continuance in the record, the action of the court in overruling it can not be considered.

**10.—Same—Record—Practice on Appeal.**

Where there was nothing in the record about the court's admonition to defendant's counsel or that the court interrogated any witness, these grounds in a motion for new trial can not be reviewed.

**11.—Same—Circumstantial Evidence—Charge of Court.**

Where, upon trial of incest, the evidence was direct, there was no error in the court's failure to charge on circumstantial evidence.

Appeal from the District Court of Cherokee. Tried below before the Hon. James I. Perkins.

Appeal from a conviction of incest; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was indicted, tried and convicted of the offense of incest, and his punishment assessed at two years confinement in the State penitentiary.

Appellant was charged with having had carnal knowledge of his niece, Viola McCullough. Appellant's principal contention in this case is that he is not related to Viola McCullough, nee Granger, for the reason that while it is true that the girl was born after the marriage of Fayette Granger and Bam Granger, yet it is contended that Fayette Granger is not the father of Viola, but that another person had illicit intercourse with the mother and was her father. Defendant introduced evidence tending to show that Fayette Granger was

away from home at the time that the mother must have conceived, and offered as witnesses Bam Granger and Warren Davis. The following bill presents the matter as presented by the record:

"Be it remembered that upon the trial of the above entitled and numbered cause the following proceedings took place, to wit: Defendant: I want to introduce the witnesses—— Court: The ones you spoke to me about privately? Defendant: Yes, sir. Court: You may have a bill of exceptions to that matter. Defendant: All right, with an exception. These two witnesses are the mother, Bam Granger, and Warren Davis, as to who the father of this girl was. State: I object to that. Court: It was not necessary—— Defendant: I wanted my exception, I didn't want to consume time. I believe I will ask permission to introduce these witnesses. Court: For the purpose you stated to me? Defendant: Yes, sir. Court: Well, you can't do it. Defendant: Then I take an exception.

"To all of which the defendant then and there excepted, for the reason that had said witnesses been permitted to testify they would both have sworn that the husband, Bam Granger, was not the father of Viola McCullough, but that her father was a negro who had been the paramour of the said Bam Granger during the absence of her husband; which proof the court having refused to permit the defendant to make, the defendant then and there excepted, and now here tenders this his bill of exceptions, and asks that the same be signed, approved and ordered filed as a part of the record in this cause, which is accordingly done.

(Signed) W. E. Donley,<br>Attorney for defendant.

"Defendant's attorney, Mr. Donley, had approached me privately and told me he could prove acts of illicit intercourse between the mother of Viola McCullough and the negro man Davis by Davis and by the mother, Bam Granger, but that he doubted the admissibility of such evidence and would not offer it unless I thought it admissible. I told him I would hold it not admissible, it being my understanding that want of access by the husband was the only method by which the paternity of a child born in wedlock could be called in question; that until this want of access was shown the presumption of law was conclusive that the husband was the father and that this presumption could not otherwise be rebutted. Mr. Donley then said he would not offer the evidence and I said, 'though, if upon investigation he questioned the correctness of my ruling and wanted to save the point I would allow his bill of exceptions presenting the point the same as if he had offered the evidence and it had been rejected in a formal manner. To this extent and to present this point for decision and no further this bill is allowed. The object and motive of counsel in attempting later on, to raise the question in the presence of the jury may be inferred."

It is thus seen by the qualification of the bill that what was desired to be proven by the witnesses were acts of illicit intercourse between them, and the question arises, can a child born in lawful wedlock be thus proven to be illegitimate? The presumption of law is that a child born in lawful wedlock is legitimate, and at common law, a married woman had no right to testify to acts of intercourse with another, or nonaccess of her husband on the question of bastardy or illegitimacy of her child. The reason for this, as stated in the phrase of Lord Mansfield, is based on decency, morality and public policy, and neither husband nor wife should be allowed to bastardize a child of the wife by showing acts of adultery on the part of the wife, or the nonaccess of the husband. The testimony is rejected, not so much from the fact that it would reveal the immoral conduct of the mother, as because of the effect it would have on the unfortunate child, who is not at fault, but who would be the chief sufferer. In regard to the testimony of the mother not being admissible it has been clearly decided by this court in Simon v. State, 31 Texas Crim. Rep., 186, in which it is held that the mother and father will not be permitted to testify to any fact which would render children born in lawful wedlock bastards. For an extended discussion of this question see Wallace v. Wallace, 14 Law. Rep. Ann., 544, and a list of authorities so holding. As to whether the witness Davis should have been permitted to testify that he had illicit intercourse with Bam Granger as a circumstance tending to show that Viola was an illegitimate child raises the question as to what character of testimony will be admitted by the courts to prove a child illegitimate when born in lawful wedlock. If the witness had proposed to testify that Fayette Granger was absent and not at home at any time when it would have been possible for him to have been the father, the testimony would have been admissible, and the learned trial judge recognized this rule because he permitted all other witnesses to testify to any fact or circumstance that they knew which would have shown the absence of Fayette Granger, and rendered it impossible for him to have been its father. After an investigation of the authorities we have arrived at the conclusion that acts of intercourse between the mother and another than her husband are not admissible on the question of legitimacy of children born during the existence of the marriage relation, but that the only testimony admissible to prove this fact is that the husband is impotent, or is absent from home for such length and at such time as would render it impossible that he is the father of the child, and the testimony of the mother and father is not admissible to prove that fact, but it must be proven by disinterested witnesses. In the case of Mink v. State, 60 Wis., 583, it is held: "The law is well settled that the wife, on the question of the legitimacy of her children, is incompetent to give evidence of the nonaccess of her husband during the time in which they must have been begotten. This rule is founded on the very highest grounds

of public policy, decency, and morality. The presumption of the law is, in such a case, that the husband had access to the wife, and this presumption must be overcome by the clearest evidence that it was impossible for him, by reason of impotency or imbecility, or entire absence from the place where the wife was during such time, to have had access to the wife, or to be the father of the child. Testimony of the wife even tending to show such fact, or of any fact from which such nonaccess could be inferred, or of any collateral fact connected with this main fact, is to be most scrupulously kept out of the case; and such nonaccess and illegitimacy must be clearly proved by other testimony." If the husband had access to the wife, the fact that she had intercourse with another and different person is inadmissible on the question of the legitimacy of the child. In the case of Bury v. Philpott, 2 Myl. & K., 349, 7 Eng. Chanc., 350, it is said: "Access is such access as affords an opportunity for sexual intercourse, and where the fact of such access between husband and wife, within a period capable of raising the legal inference as to the legitimacy of a child, is not disputed, if it were proved that she slept with a paramour every night, I must still declare the children to be legitimate. The interest of the public depends upon a strict adherence to the rule." This is putting the matter as strong as it is possible, and is conclusive that impotency and nonaccess are the only facts upon which a court or jury would be authorized to find a child illegitimate born during lawful wedlock. In Banbury Peerage Case, 1 Sim. & Stu., 153, it was held that a child which was conceived while the parents were living together, would be conclusively presumed to be legitimate, though it was affirmatively proven the wife had been guilty of adultery. This seems to have been the rule at common law, and in all those States where it has not been changed by statute. The State and society has an interest in the matter, and the legitimacy of children can not be lightly assaulted, but must be proven by testimony which would render it impossible for the husband to be its father—the evidence must exclude the possibility of him being so, and the only evidence that would do this would be nonaccess or his impotency. The bill presents no error. In itself it is incomplete, as it does not show what the testimony of the witness would have been, but if we presume that they would have testified to acts of intercourse the testimony must go further and show the absence of the husband during all that time gestation could have taken place. The other three bills relating to the evidence of these two witnesses can not be considered, as the court refused to approve them, stating as ground for his refusal that "the same state of facts in so far as they are correctly stated, has been embodied and made a part of the record in the bill herein aproved and allowed," which is the bill copied in this opinion. The court, refusing to approve the bills, and the defendant filing no exception to his action in so doing, they present nothing for review.

In bill No. 2 it is stated a question was objected to and objection sustained. The answer that would have been made is not given. A bill of exceptions saved to the exclusion by the court of questions asked a witness will not be considered on appeal, which does not state what the reply would have been. Love v. State, 35 Texas Crim. Rep., 27; McCray v. State, 38 Texas Crim. Rep., 609.

While the witness Henry Foote was on the stand he was asked, "What is the color of this woman, Viola?" The witness answered, black. Objection was made to this question, which was sustained by the court. Defendant states that he was endeavoring to show that she was not of the same color as the husband of her mother. It appears that her mother was black, and if we take the record as a whole, we find that her husband was "gingercake" in color. We do not find where this specific question has been passed on by this court, but in the case of Illinois, etc., v. Bonner, 75 Ills., 315, it is held: Where one's mother was an Indian, proof that the father was a colored man will not be admissible to overcome the presumption of legitimacy, as the color will be referred to that derived from the mother. The court in approving the bill states he admitted all evidence tending to show "want of access," and we can not say the court erred in holding that the paternity of the child could not be otherwise impeached.

When one of the State's witnesses was testifying, the defendant desired to ask her if she had not had improper intercourse with a certain man, to which the witness answered, no. This woman had nothing to do with the paternity of either defendant or Viola, and it was not admissible to seek to thus impeach her, but the court says the witness answered the question and he did not exclude the answer, consequently under no phase does it present error.

There is no motion for continuance in the record, consequently we can not pass on the correctness of the action of the court in overruling it.

There is no bill in the record approved by the court, showing that the court admonished the defendant's attorney or what he said if he did do so, and none showing that the court interrogated any of the witnesses; consequently these grounds in the motion are not passed upon.

There was no error in the court not charging on circumstantial evidence as the witness Fannie Walton testifies to seeing the act of copulation. All the other bills of exceptions referred to in the motion for new trial are not in the record before us. Neither does the motion show what should have been in the bill, merely stating that the court "erred in admitting testimony as shown by bills of exceptions Nos. 13, 14, 15, 16, 17, 18, 19 and 20. No such bills being in the record, there is nothing we can pass on.

We have fully discussed herein every bill of exceptions approved

by the court, and the other matters are not presented in a way we can consider them.

Judgment affirmed.

*Affirmed.*

Prendergast, Judge, absent.