**Richard P. BARNETT, Appellant,**

v.

**Vera Lou BARNETT, Appellee.**

**No. 7118.**

Court of Civil Appeals of Texas, Beaumont.

Feb. 26, 1970.

Rehearing Denied March 19, 1970.

Max Garrett and Tom Letbetter, Houston, for appellant.

Harris, Davant & Fewell, Houston, for appellee.

PARKER, Chief Justice.

Vera Lou Barnett sued her husband, Richard P. Barnett, for a divorce, child support for five children born while the marriage existed, division of the community property and for attorney's fees. Upon a jury verdict, judgment was rendered granting a divorce with the wife being awarded custody of the five children, the community property being divided and the wife's attorney's fees in the sum of $1,950 adjudged against the defendant-husband. Richard P. Barnett has appealed. The parties will be designated as in the trial court or as appellant and appellee.

The husband, Barnett, denies paternity of the last child born during the existence of this marriage, asserts the court erred in awarding attorney's fees in the sum of $1,950 and erred in dividing bank stock. The Barnetts were married on November 21, 1954. The last child was born December 30, 1966. The plaintiff's original petition was filed December 8, 1967. The cause came on to be heard on the 22nd day of April, 1969, and judgment was entered May 6, 1969.

In Points of Error Nos. 1, 2, 3, and 18, the defendant contends that the trial court erred in sustaining the plaintiff's objections to the introduction of four exhibits proved up as a business record of a hospital or a doctor and under Article 3737e, V.A.C.S. should have been admitted under this exception to the hearsay rule.

These points of error are considered with Points of Error 5 to 17, both inclusive, and 19 to 25, both inclusive, wherein appellant asserts error on the part of the trial court in sustaining appellee's objections to admission in evidence of questions and answers in the deposition of Dr. Thibodeaux.

By his first twenty-seven points, appellant challenges in various ways the exclusion of the evidence which would have tended to bastardize this child. Although appellee points to the violation of certain briefing rules, we go to the heart of the matter—Was the statement of the appellee, as made to her physician, admissible under the Hospital Records Act, Article 3737e, V.A.C.S.?

It has been said that in "1777, Lord Mansfield was inspired—apparently by some brooding omnipresence in the sky—to declare that 'decency, morality and policy' required the law to be that a couple, after the birth of a child in wedlock, would not be heard to say that they have had no connection and their offspring is spurious." Clark v. State of Maryland, 208 Md. 316, 118 A.2d 366, 368 (Maryland Ct.App., 1955). Wigmore, Vol. VII. 358, 361, § 2063 (3rd Ed.) criticizes the ruling and speculates as to the cause of this "aberration" which was obiter dictum in Mansfield's case. Nevertheless, the rule has survived nearly two centuries of criticism by the scholars and legal writers on the subject and is firmly embedded in the jurisprudence of Texas. We will leave to the scholars any further assaults upon the rule.

We have an effort made here to avoid the effect of Lord Mansfield's rule by using the device of the hospital records statute, Article 3737e, V.A.C.S. Admittedly, the records satisfy the statute as to admissibility, but for the language found in Skillern & Sons, Inc. v. Rosen, 359 S.W.2d 298, 305 (Tex.Sup., 1962). The statements

attributed to the mother, as related in the report, pertain to a subject of which the physician could not have had personal knowledge. As Justice Hamilton said in Rosen:

"* * * statements as to how an accident happened or where it happened, age, *medical history*, etc., do not become particularly trustworthy just because it is hospital routine to record them and they should be excluded. The legislature has provided for their exclusion by the requirement of *personal knowledge* by an employee or representative of the 'business' (e.g., hospital). The latter examples are not within the personal knowledge of the hospital personnel. They have no personal knowledge of how or where the patient was injured." (The first emphasis in this quotation has been supplied, the latter is by the Supreme Court.)

Holding that the record was admissible in Rosen because such was an admission against interest on the part of the patient, Justice Hamilton then said:

"It appears that the question resolves itself down to this: if the hospital employee to whom Miss Rosen made the admission could have properly testified to the fact that she made such admission, then a proper record thereof would be admissible." (359 S.W.2d at p. 306)

Thus, if the statements of the mother would have been admissible, under any theory, such would have been admissible under the statute and Justice Hamilton's decision in Rosen.

The statements in such records were from the wife, stating that her last menstrual period commenced April 4, 1966. The excluded evidence from Dr. Thibodeaux's deposition was based upon these statements from which the doctor attempted to calculate the period of normal pregnancy and conclude therefrom the husband probably was not the father of the child in question. There was no conclusive proof

that the husband did not have access to his wife and was at all times absent from the continental United States from February 1, 1966, until June 1, 1966. Plaintiff's objections to the introduction of both the hospital records and the deposition testimony of the doctor were clear and adequate to preclude the admission of the tendered testimony.

■ Neither Barnett nor his wife could directly deny the legitimacy of a child born during their lawful marriage. Neither could have testified to non-access to the other to deny paternity of this child born during marriage. A wife may not testify to a fact tending to bastardize a child or show non-access to her legal husband. Esparza v. Esparza, 382 S.W.2d 162 (Corpus Christi, Tex.Civ.App., 1964, no writ), citing McCormick & Ray, Vol. 1, § 90, pp. 110 to 113; 8 Baylor Law Rev. 110; 8 Tex. Jur.2d, Bastardy § 8, p. 523; Byrd v. Travelers Ins. Co., 275 S.W.2d 861 (San Antonio, Tex.Civ.App., 1955, error ref., n. r.e.); Pinkard v. Pinkard, 252 S.W. 265 (Beaumont, Tex.Civ.App., 1923, no writ); Gonzales v. Gonzalez, 177 S.W.2d 328, 329 (El Paso, Tex.Civ.App., 1943, no writ); Schlang v. Schlang, 415 S.W.2d 28, 32 (Houston, Tex. 1st Civ.App., 1967, error ref., n.r.e.).

Since the mother would not have been permitted to give the testimony found in the hospital record, such was not made admissible simply because found therein. It could not have been received as an admission against interest; and it was not admissible otherwise.

■ Since she could not have so testified upon the trial, certainly the doctor could not testify the child was a bastard from statements made by the wife found in the hospital records and the physician's record of new-born baby, plus the doctor's opinion the birth was the result of a "normal pregnancy" and that the child was a full-term baby. Under Texas decisions,

the controlling issue for a court or jury is: Was it impossible for the husband to have been the father of the child born in wedlock by reason of nonaccess? Lawson v. Baker, 351 S.W.2d 571 (Houston, Tex. 1st Civ.App., 1961, no writ). The presumption is that she was legitimate for she was born during the existence of a legal marriage. Gonzalez v. Gonzalez, supra; Carnes v. Kay, 210 S.W.2d 882 (Amarillo, Tex.Civ. App., 1948, no writ); Pinkard v. Pinkard, supra; Moore v. Moore, 299 S.W. 653 (Waco, Tex.Civ.App., 1927, no writ); Marckley v. Marckley, 189 S.W.2d 8 (San Antonio, Tex.Civ.App., 1945, no writ). This presumption was not overcome because there is no competent or probative evidence that Barnett could not have had access to his wife within the period of gestation.

A son born June 7, 1956, testified his mother did not leave him at home in the United States and go to see his daddy in Thailand from February, 1966 to June of 1966. The boy did not testify that his father did not see his mother during that period of time. ' Lawson v. Baker, supra; Foote v. State, 65 Tex.Cr.R. 368, 144 S.W. 275 (1912); Marckley v. Marckley, supra; Groulx v. Groulx, 98 N.H. 481, 103 A.2d 188, 46 A.L.R.2d 994; Peoples National Bank of Greenville v. Manos Brothers, Inc., 226 S.C. 257, 84 S.E.2d 857, 45 A.L.R. 2d 1070; Carfa v. Albright, 39 Wash.2d 697, 237 P.2d 795, 31 A.L.R.2d 983.

There being no competent testimony in the record supporting the father's theory of illegitimacy, the proffered testimony of the attending physician as to the "full term baby," etc., was immaterial to any issue of fact and its exclusion was not error. Points of Error 1, 2, 3, 18, 5 to 17, both inclusive, and 19 to 25, both inclusive, are each overruled.

■ Defendant's Point of Error No. 4 asserts the trial court erred in sustaining the plaintiff's objection to the introduction of defendant's Exhibit No. 3 the same being a certified copy of the defendant's passport. Defendant attempted to introduce a copy of his passport, not a certified copy of it. Admission in evidence was refused by the court on the objection that it contained objectionable hearsay, was not the best evidence and was an unauthenticated copy of a document, the authenticity of which was neither apparent nor proved. Defendant has cited no authority indicating the trial court erred in sustaining plaintiff's objection as stated hereinabove. Point of Error No. 4 is overruled.

■ Defendant requested a special issue (b) which the trial court refused to submit to the jury. This requested issue, would have inquired if the child in question was illegitimate. There was an accompanying instruction. There is no competent probative evidence that this child was illegitimate so the issue was properly refused. Point of Error No. 26 is overruled.

Likewise, Point of Error No. 27 is overruled because the trial court did not err and abuse his discretion in awarding child support in the amount of $600 because the court took into account five children instead of four as contended by the defendant.

■ In Point of Error No. 28 defendant contends the trial court erred in entering judgment in the sum of $1,950 for attorney's fees because said sum was not supported by the evidence since a proper predicate was not laid with facts showing what had been done by the attorneys to form a basis of the hypothetical question. The jury found a reasonable amount to be allowed as attorney's fees was $2,500. In the judgment of the trial court we find:

"* * * and it is further ORDERED, ADJUDGED and DECREED that pursuant to remittitur ordered by the Court and *expressly agreed upon by counsel* that Plaintiff, Vera Lou Barnett, should be and she is hereby awarded and shall recover from Defendant, Richard P. Barnett, judgment for the further sum of One Thousand Nine Hundred Fifty

Dollars ($1,950.00) as attorneys fees for the services of her attorneys, Harris, Davant & Fewell, which sum the Court expressly finds to be reasonable and necessarily incurred, and as security for payment thereof the foregoing lien in favor of Plaintiff is hereby created;" (Emphasis Ours.)

This $1,950 is supported by the evidence of Mr. Fewell as to the time consumed and the rate per hour by the attorneys representing the plaintiff. Point of Error No. 28 is overruled.

Three Hundred Ninety-four shares of the capital stock of the First National Bank of Euless, Euless, Texas, was partitioned two-thirds to the wife and one-third to the husband, with the capital stock of the husband having a lien imposed thereon in favor of the wife to secure payment of her attorney's fees as hereinbefore set forth. Defendant contends the trial court erred and abused his discretion in awarding two-thirds of said stock to Vera Lou Barnett. This point of error is without merit and is overruled.

Judgment affirmed.