**Larry GIBSON, Appellant,**

v.

**In the Interest of J.W.T., a Minor Child, Appellee.**

**No. 09–90–245 CV.**

Court of Appeals of Texas, Beaumont.

Aug. 29, 1991.

Rehearing Denied Oct. 2, 1991.

Tom Oxford, East Texas Legal Services, Beaumont, for appellant.

A.W. Davis, Jr., Newton, for appellee.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

WALKER, Chief Justice.

This is an appeal by appellant, Larry Gibson, from the trial court's order sustaining appellees' Plea in Abatement and dismissing appellant's lawsuit. Appellees are R.T. and J.T. The child, J.W.T., was born to J.T. on March 28, 1989. Appellant, having credible reason to believe himself to be the biological father of J.W.T., filed a petition affecting the parent-child relationship seeking to establish his paternity and seeking access to J.W.T. The original petition was filed prior to J.W.T.'s birth, but a subsequently amended petition was filed by appellant on April 11, 1989. During this entire sequence of events, the biological mother, J.T., was married to R.T. J.T., upon separation from R.T., chose to live with appellant from the first part of June 1988 through October 1988. Appellant testified at the Motion for New Trial hearing that he and J.T. were engaged to be married during this time in 1988. Divorce proceedings were pending between the T.s during this period. Appellant believes that J.W.T. was conceived during this period from June through October 1988, and that appellant is the biological father.

At some point prior to the birth of J.W.T., the T.s reconciled and J.T. and R.T. began living together again as husband and wife. In response to the allegations in appellant's petitions, appellees filed a pro se response on April 3, 1989 stating that R.T. was the father of J.W.T. and denying that J.T. and R.T. were separated at the time of J.W.T.'s conception. A formal general denial was filed on April 21, 1989 by appellees' counsel. Thereafter, the trial court ordered the parties to submit to blood tests as part of the standard procedure outlined in Chapter 13 of the Texas Family Code for determinations of paternity. The record before us further reflects the contents of a deposition taken from Robert C. Giles, the scientific director of GeneScreen, Inc. in Dallas, Texas. Mr. Giles scientifically analyzed the blood taken from the parties by DNA analysis. Mr. Giles' opinion, based upon reasonable scientific certainty, was that the appellant was the fa-

ther of J.W.T. Mr. Giles testified that based upon the DNA tests, the probability that appellant was the biological father of J.W.T. was 99.41%. Appellees offered no scientific evidence to the contrary.

The record before us also reveals a transcript of sworn testimony given by appellee, R.T., on October 6, 1988 in the Fourteenth Judicial District Court of Calcasieu Parish, Louisiana. R.T. testified to, among other things, the fact that as of October 6, 1988 he (R.T.) and J.T. were not living together; that his (R.T.'s) suspicions of J.T. being "intimate" with appellant were confirmed at some point by a phone conversation with J.T.; and then this testimony was elicited from R.T.:

Q. Mr. [R.T.] T., is your wife pregnant at this time?

A. Yes, she is.

Q. Are you capable of fathering a child?

A. I've had a vasectomy.

Q. When did you have the vasectomy?

A. Right after our last child was born, in '78.

Q. Approximately 10 years ago?

A. Right.

Despite the evidence referred to above, the trial court sustained appellees' plea in abatement upon the grounds that appellant has no standing to bring suit as he did because the child, J.W.T., has a presumed father (R.T.), and that the presumed father did not initiate the lawsuit, and that appellant does not fall within any of the definitions or classes of parties enumerated in TEX.FAM.CODE ANN. § 11.03 (Vernon 1986 & Vernon Supp.1991) as being entitled to bring an original suit affecting the parent-child relationship.

Appellant presents us with three points of error, those being:

Point of Error 1. Denying the biological father of a child the right to establish paternity and obtain access to that child because the child's mother is married to someone else at the time of the child's conception and birth violates Article 1 Section 3a of the Texas Constitution by denying Appellant equality under the law because of his sex.

Point of Error 2. Denying the biological father of a child the right to establish paternity and access to that child because the child's mother is married to someone else at the time of the child's conception and birth violates Article 1 Section 13 of the Texas Constitution by denying Appellant open access to the Court and a remedy by due course of law for the injury done to him.

Point of Error 3. Denying the biological father of a child the right to establish paternity and access to that child because the child's mother is married to someone else at the time of the child's conception and birth violates Article 1 Section 19 of the Texas Constitution by depriving Appellant liberty or privileges without due course of the law of the land.

In the interest of clarity, we will set out the statutory and constitutional provisions for discussion in this opinion. TEX.CONST. art. I, § 3a states, "Equality under the law shall not be denied or abridged because of sex, race, color, creed, or national origin. This amendment is self-operative." TEX. CONST. art. I, § 13 states, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted. All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." TEX. CONST. art. I, § 19 states, "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." TEX. FAM.CODE ANN. § 11.03(a) (Vernon Supp. 1991), the pertinent portion involved in this opinion, states:

(a) An original suit affecting the parent-child relationship may be brought at any time by:

(1) a parent of the child;

(2) the child (through a representative authorized by the court);

(3) a custodian or person having rights of visitation with or access to the child appointed by an order of a court of

another state or country or by a court of this state before January 1, 1974; (4) a guardian of the person or the estate of the child;

(5) a governmental entity;

(6) any authorized agency;

(7) a man alleging himself to be the biological father of a child who has no presumed father filing in accordance with Chapter 13 of this code, but not otherwise;

(8) a person who has had actual possession and control of the child for at least six months immediately preceding the filing of the petition; or

(9) a person designated as the managing conservator in a revoked or unrevoked affidavit of relinquishment under Section 15.03 of this code or to whom consent to adoption has been given in writing under Section 16.05 of this code.

TEX.FAM.CODE ANN. § 12.01 (Vernon Supp.1991) provides the following:

(a) The parent-child relationship may be established between a child and:

(1) the biological mother by proof of her having given birth to the child;

(2) the biological father as provided by this code; and

(3) an adoptive parent by proof of adoption.

(b) the parent-child relationship extends equally to every child and parent regardless of the marital status of the parents.

TEX.FAM.CODE ANN. § 12.02(a)(1) (Vernon Supp.1991), entitled "Presumption of Paternity," provides:

(a) A man is presumed to be the biological father of a child if:

(1) he and the child's biological mother are or have been married to each other and the child is born during the marriage or not more than 300 days after the date the marriage terminated by death, annulment, divorce, or by having been declared void; ....

■ We address appellant's third point of error only as our decision on same shall be dispositive of the case. We reiterate the fact that appellant's point of error is entire-

ly grounded in a violation of the TEX.CONST. art. I, § 19 which reads: "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." With regard to this assertion by appellant that the trial court's dismissal of his petition for the reasons already mentioned was a denial of constitutionally guaranteed rights and privileges without due course of law, we feel that the proper analysis of the statutory provision in question permits us to use the same method used when analyzing federal due process complaints. *See, Massachusetts Indem. & Life v. Tex. State Bd. of Ins.,* 685 S.W.2d 104 (Tex.App.—Austin 1985, no writ). The due process clause of the federal constitution, with respect to substantive due process complaints, places the same restrictions on the exercise of state legislative power as the similar clause in the Texas Constitution. TEX.CONST. art. I, § 19; *Mellinger v. City of Houston,* 68 Tex. 37, 3 S.W. 249 (1887); *Massachusetts Indem., supra* at 113.

■ In an attempt to limit and provide guidance for interpretations of the federal due process clause, the United States Supreme Court has insisted that the allegedly violated interest must involve life, liberty, or property; that the life, liberty, or property interest be of "fundamental" proportions, *and* that it be an interest traditionally protected by our society. As the Court has put it, the due process clause affords only those protections "so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Michael H. v. Gerald D.,* 491 U.S. 110, 122, 109 S.Ct. 2333, 2341, 105 L.Ed.2d 91, 105 (1989); *Snyder v. Massachusetts,* 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934). With regard to the rights and privileges accorded to parenthood, these have been deemed to be fundamental or implicit in the concept of ordered liberty in cases such as *Prince v. Massachusetts,* 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944); *Pierce v. Society of Sisters of Holy Names,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67

L.Ed. 1042 (1923). We agree and hold that the rights and privileges of parenthood are indeed fundamental. We further hold that such fundamental rights and privileges that attach to parenthood have been traditionally protected by our society as well as rooted in the traditions and conscience of our people as to be ranked as fundamental. In Texas, one need only look to TEX.FAM. CODE ANN. § 12.04 (Vernon Supp.1991) which sets out a lengthy list of parental rights, privileges and duties; many of them going to the very core of what it means to be a parent. Section 12.04(1) gives a parent "the right to have physical possession, to direct the moral and religious training, and to establish the legal domicile of the child." Section 12.04(2) imposes upon a parent "the duty of care, control, protection, and reasonable discipline of the child." Section 12.04(3) imposes upon a parent "the duty to support the child, including providing the child with clothing, food, shelter, medical care, and education." Section 12.-04(6) gives a parent "the power to consent to marriage, to enlistment in the armed forces of the United States and to medical, psychiatric, and surgical treatment." These are just some of the rights and privileges conferred upon a parent under the laws of Texas. Those set out above are undoubtedly the most traditional rights, duties, and privileges that, we feel, society has always considered at the core of parenthood.

We realize that the above holdings put us in direct conflict with the United States Supreme Court's decision in *Michael H. v. Gerald D., supra.* That case is directly on point with the issues involved in the instant case except for the fact that the case before the Supreme Court was grounded entirely on federal constitutional claims. Justice Scalia, writing for a plurality of the Court, upheld a California statutory presumption that the husband of a child's mother is the child's father in that the statute did not violate the putative biological father's rights under the Fourteenth Amendment's due process clause. Justice Scalia focused his examination of prior Supreme Court decisions, not on the putative father's individual rights or privileges of

parenthood, but on the "sanctity of the family precisely because the institution of the family is deeply rooted in this Nation's history and tradition." *Michael H. v. Gerald D., supra* 491 U.S. at 124, 109 S.Ct. at 2342, 105 L.Ed.2d at 106. The Court then framed the issue in the context of the relationship between the mother, the child, and the putative biological father and whether or not that particular relationship was ever treated as a "protected family unit under the historic practices of our society...." Needless to say, they found that such a relationship had never been accorded such Constitutional protections. *Michael H. v. Gerald D., supra* 491 U.S. at 124, 109 S.Ct. at 2342, 105 L.Ed.2d at 106. In a rather lengthy footnote, the plurality chides Justice Brennan for criticizing, in his dissent, "our methodology in using historical traditions specifically relating to the rights of an adulterous natural father, rather than inquiring more generally 'whether parenthood is an interest that historically has received our attention and protection.'" We, frankly, wonder the same thing as Justice Brennan and respectfully disagree with the obviously strained analysis used by the majority in upholding the statute before them. Thank God the Fourteenth Amendment gives the federal government no power to impose upon this state its view of what constitutes wise economic or social policy. *See, Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *Hernandez v. Houston Ind. School Dist.,* 558 S.W.2d 121 (Tex.Civ.App.—Austin 1977, writ ref'd n.r.e.) *overr. on other grounds,* 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982).

■ We now move on to an analysis of the statute in question, TEX.FAM.CODE ANN. § 11.03(a)(7), as it impacts upon what we have found to be fundamental under TEX. CONST. art. I, § 19, i.e., those rights and privileges attaching to and so thoroughly integrated within the essence of what it is to be a parent. Courts have traditionally held that where certain fundamental rights are involved, regulations limiting these rights may be justified only by a "compelling state interest." *See, Kramer v. Un-*

*ion Free School Dist.*, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969); *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); *In the Interest of McLean*, 725 S.W.2d 696 (Tex.1987). Furthermore, the legislative enactment in question *must* be narrowly drawn to express *only* the legitimate state interests at stake. *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Aptheker v. Secretary of State*, 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964); *Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). As we see it, the State of Texas' compelling interest may be summarized by the following language taken from our case, *Barnett v. Barnett*, 451 S.W.2d 939 (Tex.Civ.App.—Beaumont 1970, writ dism'd w.o.j.):

> It has been said that in "1777, Lord Mansfield was inspired—apparently by some brooding omnipresence in the sky— to declare that 'decency, morality and policy' required the law to be that a couple, after the birth of a child in wedlock, would not be heard to say that they have had no connection and their offspring is spurious." *Clark v. State of Maryland*, 208 Md. 316, 118 A.2d 366, 368 (Maryland Ct.App.1955). Wigmore, Vol. VII. 358, 361, § 2063 (3rd Ed.) criticizes the ruling and speculates as to the cause of this "aberration" which was obiter dictum in Mansfield's case. Nevertheless, the rule has survived nearly two centuries of criticism by the scholars and legal writers on the subject and is firmly embedded in the jurisprudence of Texas. We will leave to the scholars any further assaults upon the rule.

*Barnett, supra* at 940. We feel that the issues of the instant case, viewed from our present culture and society and not that of 1777, demand that scholarly tinkering be supplanted by rational, common sense. Basic concepts of equal and fair justice must refuse to strike dumb the unsuspecting and, perhaps, misled biological father who may be innocently duped, through charted deceit, into meaningless expectation; being forever barred from that most precious right of establishing privileges, duties, and bonding with one's biological child. If the rule be otherwise, what dastardly deception could be worked upon the unsuspecting man whose future pleas are but futile groanings to be silenced through unreasonable applications of the law. We are cognizant of the state's compelling interest in preventing the delegitimation of offspring and maintaining the welfare and dignity of the traditional marital unit to the greatest extent possible. However, these interests, to withstand constitutional scrutiny, must do so by narrowly drawn regulations designed to serve those interests without infringement upon one's fundamental rights and privileges guaranteed by Art. I, § 19. This has traditionally been the test regarding government action that may be found to be compelling yet at the same time infringes upon fundamental rights under constitutional protection. *See, Sable Communications v. FCC*, 492 U.S. 115, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989); *Frazee v. Employment Security Dept.*, 489 U.S. 829, 109 S.Ct. 1514, 103 L.Ed.2d 914 (1989); *Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980); *Hynes v. Mayor of Oradell*, 425 U.S. 610, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976).

In *Butler v. Michigan*, 352 U.S. 380, 77 S.Ct. 524, 1 L.Ed.2d 412 (1957), a unanimous Supreme Court reversed a conviction under a statute which made it an offense to make available to the general public materials found to have a potentially harmful influence on minors. The court found the law to be insufficiently tailored since it denied adults their fundamental rights of free speech by permitting them to read only what was acceptable for children. As Justice Frankfurter said in that case, "Surely this is to burn the house to roast the pig." *Butler, supra* 352 U.S. at 383, 77 S.Ct. at 526, 1 L.Ed.2d at 414. In our analysis of § 11.03(a)(7), we find that its language is not reasonably restricted to the evil with which it is said to deal. If the evil be the protection of the child from the stigma of illegitimacy, the statue sweeps too broadly in that the husband, being the

"presumed" father, may institute a lawsuit in hopes of getting a court to declare the child not his issue. If the evil be the disruption of the sanctity of the marital unit, again, the statue sweeps too broadly as either the mother or the "presumed" father may institute a suit questioning the legitimacy of the child. In either instance, evidence would have to be presented that the mother engaged in extramarital sexual relations with another man. Yet in the statutory scheme of things, this type of lawsuit would be entirely proper no matter that it appears to sanction in one breath what is prohibited in another; namely the delegitimizing of a child and/or the tearing apart of the "sacred" marital unit by the mother or "presumed" father, but not by the biological father.

We conclude, therefore, the requirement that the child of the putative biological father have no "presumed father" as that term is defined in § 12.02 before the putative biological father may institute a cause of action affecting the parent-child relationship goes too far and as such, violates Art. I, § 19 of the Texas Constitution. Indeed, § 12.01(b) stating, "The parent-child relationship extends equally to every child and parent regardless of the marital status of the parents", seems to be in direct conflict with any statutory provision that would totally prohibit the biological father of a child from attempting to exercise his fundamental rights and privileges of parenthood solely because the biological mother was married to another man at the time the child was born. As many critics have pointed out, the fact that the biological mother, for whatever reason, has chosen to engage in sexual relations outside of marriage is proof itself that the "integrity and solemnity of the family unit" has been damaged at least to some degree. Because a husband chooses to forgive and forget the fact that his wife has been impregnated by another man, and the wife is happy with remaining married *and* at the same time giving birth to another man's child does not, we feel, give license to the state to perpetuate the myth of "presumption of paternity" so as to deprive the biological father of at least a chance of being able to exercise those rights, duties, privileges, and responsibilities that all civilized societies have recognized to be fundamentally ingrained in the concept of parenthood. We hold, therefore, that § 11.03(a)(7) of the Texas Family Code violates Art. I, § 19 of the Constitution of the State of Texas. Appellant's point of error 3 is sustained. We reverse the order of the trial court that sustained the appellees' plea in abatement and remand this case back to the trial court for a full trial on the merits in accordance with Chapter 13 of the Texas Family Code. To the extent that *Barnett, supra* and any other of our cases hold to the contrary, they are overruled.[1]

REVERSED AND REMANDED.

---

1. Intriguing would be the discussion and analysis of a child's rights to a bonding relationship with its biological father, however, that issue is not squarely before us.