Henderson v. Weitzikowski 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-91-173-CV

        MARVIN HENDERSON,
                                                                                                        Appellant
        v.

        KAREN LOU WIETZIKOSKI,
                                                                                                        Appellee
 

From the 77th District Court
Limestone County, Texas
Trial Court # T-114-A
                                                                                                    

O P I N I O N
                                                                                                    

          The question presented is whether a person claiming to be the natural father of a child who
has a "presumed father" can maintain a suit to establish his paternity. We will follow the decision
of the Beaumont Court of Appeals in holding that section 11.03(a)(7) of the Family Code violates
the due-course-of-law clause of article I, section 19, of the Texas Constitution. See Tex. Const.
art. I, § 19; Tex. Fam. Code Ann. § 11.03(a)(7) (Vernon Supp. 1992); Gibson v. In the Interest
of J.W.T, 815 S.W.2d 863, 869 (Tex. App.—Beaumont 1991, writ granted). We also determine
that section 11.03(a)(7) of the Family Code violates the Texas Equal Rights Amendment, article
I, section 3a, of the Texas Constitution, but does not violate the Open Courts provision of article
I, section 13. See Tex. Const. art. I, §§ 3a, 13. Accordingly, we will reverse the judgment and
remand the cause for trial.
PROCEDURAL BACKGROUND
          Marvin Henderson filed a petition to establish a parent-child relationship alleging among
other things that: (1) he is the biological father of J.R.W. and has standing to bring the suit under
section 11.03(a)(7) of the Family Code; (2) he has standing under section 11.03(b) of the Family
Code because of substantial past contact with the child; (3) the "presumed father of the child is
Kenneth Wietzikoski, the husband of Karen Wietzikoski," the child's mother; (4) he is a
"presumed father pursuant to [section] 12.02 of the Texas Family Code"; (5) because of section
12.01(b) of the Family Code, the legal presumption that Kenneth is the father of J.R.W. may be
rebutted by a decree establishing Henderson's paternity of J.R.W.; (6) appointment of a managing
conservator is necessary; and (7) a denial of his right to maintain the suit would violate his rights
to due process under the state and federal constitutions. He also filed a "Statement of Paternity,"
in which he acknowledged that he is the biological father of J.R.W. Karen filed special exceptions
alleging that Henderson could not maintain the action because the child has a presumed father,
Kenneth. She also denied that Henderson is the biological father of J.R.W., that a managing
conservator is necessary, and that the best interest of the child would be served by appointing
Henderson. The court sustained the special exceptions and ordered that all of Henderson's
allegations of paternity be stricken from his pleadings but reserved a ruling on his allegations that
he should be appointed as a managing conservator of J.R.W. The court then severed Henderson's
cause of action regarding paternity from his cause of action seeking conservatorship of the child,
making the order sustaining the special exceptions final. After his motion for a new trial was
denied, Henderson perfected this appeal.
THE CONTENTIONS ON APPEAL
          Henderson asserts in five points that his right to bring the suit is constitutionally protected,
that a denial of his right to maintain the suit violates the "open courts" provision of the state
constitution, that the court's order granting the special exceptions misinterprets the Family Code,
that the order "results in gross injustice and inequity and violates public policy," and that the court
failed to consider the best interest of the child. Under point one, he asserts that section
11.03(a)(7) of the Family Code violates both the due-process and equality-under-the-law
provisions of the Texas Bill of Rights.
THE STATUTE
          Section 11.03 of the Family Code provides:
§ 11.03 Who May Bring Suit
(a) An original suit affecting the parent-child relationship may be brought at any
time by:
                    (1)      a parent of the child;
                    (2)      the child (through a representative authorized by the court);
. . .
                    (7)      a man alleging himself to be the biological father of a child who has no
presumed father filing in accordance with Chapter 13 of this code, but not
otherwise;
Tex. Fam. Code Ann. § 11.03 (emphasis added). In a 1989 amendment, the words "a man . .
. alleging himself to be the biological father of a child who has no presumed father" replaced the
words "the alleged or probable father of an illegitimate child." Act of May 29, 1989, 71st Leg.,
R.S., ch. 375, § 2, 1989 Tex. Gen. Laws 1477, 1477-78.
DUE COURSE OF LAW
          The facts of this case are substantially the same as the facts of Gibson. See Gibson, 815
S.W.2d at 864-65. In each case, a man not married to the child's mother is attempting to establish
a parent-child relationship with a child who has a presumed father. In each case, the man asserts
that the provisions of the Family Code precluding such an action violate the due-course-of-law
provision of the state constitution. In each case, the trial court has summarily denied the man the
right to attempt to establish a parent-child relationship with the child. Consequently, we will
follow the decision in Gibson holding that section 11.03(a)(7) of the Family Code violates article
I, section 19, of the Constitution of the State of Texas. See id. 
 
TEXAS EQUAL RIGHTS AMENDMENT
          Henderson asserts that section 11.03(a)(7) of the Family Code violates the Texas Equal
Rights Amendment.


 Since 1972, the Texas Constitution has guaranteed that equality shall not
be denied because of sex. Tex. Const. art. I, § 3a. Section 3a of article I provides:
Equality under the law shall not be denied or abridged because of sex, race, color,
creed, or national origin. This amendment is self-operative.
Id. Because no federal counterpart of the Equal Rights Amendment exists, federal precedent
cannot control. In Interest of McLean, 725 S.W.2d 696, 697 (Tex. 1987). Thus, our decision
rests on independent state grounds under the Texas Constitution. See Michigan v. Long, 463 U.S.
1032, 1041, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983). 
          In assessing Henderson's equal-rights assertion, we will follow the analysis used by the
Supreme Court in McLean. See McLean, 725 S.W.2d at 697-98. Billy Dean Wise was the
undisputed father of a child born to an unwed mother. Id. at 696. Although married to another
woman, he sought to be named managing conservator of the child after the mother placed the child
for adoption. Id. The trial court denied Wise's suit for legitimation and appointed the Child
Welfare Unit as managing conservator of the child. Id. On appeal, he contended that sections
13.21(b) and (c) of the Family Code violated the Texas Equal Rights Amendment. Id. at 697. The
Supreme Court agreed, holding that a father seeking a decree of legitimation should not, when the
mother has not consented to the decree, be required to prove that such a decree is in the best
interest of the child—a higher standard of proof—solely because he is a male. Id. at 698.
          The first step in a case invoking the Texas Equal Rights Amendment is to determine
whether equality "under the law" has been denied. Id. at 697. Any discrimination that occurred
in denying Henderson's suit to establish paternity is clearly "under the law" because it is mandated
by a state statute. See id. Our next inquiry is whether equality was denied because of a person's
membership in a protected class of sex, race, color, creed, or national origin. Our task is to
examine the Family Code to see if it treats Henderson differently because he is a male. See id.
          When a child is born, its mother automatically exercises all of the rights, duties, and
privileges of a parent in the parent-child relationship. Tex. Fam. Code Ann. § 12.04 (Vernon
Supp. 1992); McLean, 725 S.W.2d at 697. Circumstances are different for the father of a child
born to a woman who is married to someone else. Section 11.03(a)(7) of the Family Code stands
as a complete bar to such a father who nevertheless wants to step forward and shoulder the
responsibilities of a parent. Tex. Fam. Code Ann. § 11.03(a)(7). It does so by denying that
father the right to bring a suit to establish his paternity. Id. The mother, however, can bring
such a suit to establish that relationship. Id. § 11.03(a)(1). This is a gender-based distinction
because only men such as Henderson and those who are similarly situated are denied the right to
bring a suit to establish the parent-child relationship. Whereas McLean involved only a higher
burden of proof, Henderson is confronted with a statute that denies him the right to even present
proof. See McLean, 725 S.W.2d at 697.
          Because the challenged statute discriminates on the basis of gender, we must determine
whether such discrimination is prohibited by the Equal Rights Amendment. See id. The Equal
Rights Amendment is more extensive and provides more specific protection than both the United
States and Texas due-process and equal-protection guarantees. Id. at 698. The standard of review
recognizes that the Amendment does not yield except to compelling state interests. Id. Equality
based on sex is afforded maximum constitutional protection. Id. Even the loftiest goal does not
justify sex-based discrimination in light of this clear constitutional prohibition. Id. Discrimination
is allowed only when its proponent can prove that there is no other manner to protect the state's
compelling interest. Id.
          We recognize that the State has an interest in preserving the unity of a marriage. The State
also has an interest in the welfare of children, an interest that it exercises by regulating the parent-child relationship and defining the rights, privileges, duties, and powers of parents.


 Tex. Fam.
Code Ann. § 12.04. Under the circumstances of this case, these interests compete. Lord
Mansfield's rule, proclaimed in 1777, declared as a policy that "a couple, after the birth of a child
in wedlock, would not be heard to say that they have had no connection and their offspring is
spurious." Barnett v. Barnett, 451 S.W.2d 939, 940 (Tex. Civ. App.—Beaumont 1970, writ
dism'd) (quoting Clark v. State of Maryland, 208 Md. 316, 118 A.2d 366, 368 (Maryland Ct.
App. 1955)). Although criticized for two centuries, the rule survived because it found support in
the difficulty of proving conclusively that a particular man was the father of a particular child. 
The alleged father might or might not admit paternity or even access. The mother might or might
not make such admissions. The mother's husband might or might not claim non-access or
paternity. Even if all parties told the truth, the circumstances might be such that a trier of fact
would be left to guess about which man was the biological father. It is understandable that the
courts would resist being called upon to adjudicate such controversies. 
          People of all ages are interested in knowing who their parents are. Adults, after being
raised by adoptive parents, seek ways and means of ascertaining the identities of their biological
parents in spite of the legal obstacles imposed through the adoption process. With advances in
technology, independent scientific tests—such as blood typing and DNA testing—are available to
the parties and to the courts to prove almost conclusively the biological relationship between a
father and a child. Indeed, in Gibson the DNA tests showed a 99.41% probability that Gibson was
the biological father. Gibson, 815 S.W.2d at 865. We believe that the State's interest in
protecting the marriage relationship after a child is conceived by a man and a woman married to
another is not as compelling as its demonstrated interest in promoting the welfare of children by
allowing paternity to be established through litigation when necessary. See Tex. Fam. Code
Ann. §§ 13.01-13.44 (Vernon 1986 & Vernon Supp. 1992). Thus, we believe that the goal of
protecting marital harmony does not justify sex-based discrimination against fathers who desire
to be recognized as a parent—the only biological parents denied that right—in light of the clear
constitutional prohibition of the Texas Equal Rights Amendment. Id. 
"OPEN COURTS"
          In point two, Henderson asserts that a denial of standing to an entire group or classification
of individuals based solely on that classification violates the open courts doctrine. See Tex.
Const. art. I, § 13. The essence of the due-process guarantee of section 13 of the Texas
Constitution (usually called the "Open Courts" provision), when a legislative act is alleged to deny
a citizen access to the courts, is: Does the litigant's right of redress outweigh the legislative basis
for the ordinance and statute? Sax v. Votteler, 648 S.W.2d 661, 665 (Tex. 1983). In Sax, the
Supreme Court said that, in analyzing a litigant's right to redress, two criteria must be satisfied: 
"First, it must be shown that the litigant has a cognizable common-law cause of action that is being
restricted. Second, the litigant must show that the restriction is unreasonable or arbitrary when
balanced against the purpose and basis of the statute." Id. at 666. Because of Lord Mansfield's
Rule, Henderson did not have a cognizable common-law cause of action that has been restricted
by legislation. Thus, he cannot meet the first test of Sax. See id. at 665.  
CONCLUSION
          We overrule point of error number two. However, we sustain point of error number one
and reverse the judgment and remand the cause to the trial court for a trial on the merits of
Henderson's suit to establish his paternity of J.R.W. Because of this disposition, we do not reach
Henderson's remaining points.
 
                                                                                 BILL VANCE
                                                                                 Justice
Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Reversed and remanded
Chief Justice Thomas concurring and dissenting
Opinion delivered and filed October 30, 1992
Publish