In re BABY GIRL S., A Child.

No. 11–81–157–CV.

Court of Appeals of Texas,
Eastland.

Feb. 11, 1982.
Rehearing Denied March 4, 1982.

Sam Moore, Robinson, Hanna, Moore & Holloway, Inc., Abilene, for appellant.

Charles E. Myers, Abilene, for appellee.

Mary F. Keller, American Civil Liberties Foundation of Texas, Inc., ·Austin, amicus curiae.

RALEIGH BROWN, Justice.

Christian Homes of Abilene, Inc., brought suit to terminate the parent-child relationship of an infant illegitimate girl, B.G.S. The unmarried biological father filed a cross action seeking to legitimate the child and gain her custody. Following trial before the court, judgment was entered that the parent-child relationship between the mother and B.G.S. be terminated; the father's petition to legitimate be denied and all his rights to the child be foreclosed; and Christian Homes be appointed managing conservator of B.G.S. The biological father appeals. We affirm.

In his first point of error the biological father contends that the trial court abused its discretion by denying the petition for voluntary legitimation.

At the time of the hearing, August 8, 1981, the natural mother was only sixteen and the biological father was twenty-five years old. They had met through the father's sister and had a premarital sexual relationship for at least a year and a half before the child was conceived in April, 1980. After being aware of her pregnancy, the girl considered and discussed her alternatives with her parents and the father and chose to go to a home for unwed mothers operated by Christian Homes. She concluded after additional counseling regarding whether she should keep the child or permit its adoption that it would be in the best interest of the child to relinquish her parental right and allow the child to be adopted. After the birth of B.G.S., the mother executed an Affidavit of Relinquishment of Parental Rights pursuant to Tex.Fam.Code Ann. § 15.03 (Vernon Supp. 1981).

At the hearing the biological father testified: "All I can say is I love my daughter and I want her, and she's blood, and I just can't see letting her go when I want to raise her myself." His plans included returning with her to the same small town where the illicit sexual activity occurred

and included the assistance of his mother and sister in the rearing of the child. Although the biological father testified as to his readiness to pay all cost involved in the pregnancy and the delivery and care of the child and her mother, there had never existed a family relationship between himself and the child. The biological father had a form of epilepsy called grand mal which was controlled with medication.

The testimony reflects that the parents of the mother disapproved of the relationship between the mother and the biological father and forbade the consummation of a marriage relationship. It was the mother's desire that the child be adopted and reared in a two-parent Christian family. The mother herself was an adopted child and was aware of the stigma under which an illegitimate child suffers. She testified that in her opinion adoption would serve the best interest of the child. Her parents were supportive of the mother and her decision.

Tex.Fam.Code Ann. § 13.21 (Vernon Supp. 1981) provides that in a voluntary legitimation suit where the mother or managing conservator fails to give consent to the legitimation by the biological father, the court may consent to the legitimation provided the entering of *such a decree is in the best interest of the child.* (Emphasis ours)

As stated by the court in *Travis County Child Welfare Unit v. Vance,* 566 S.W.2d 112 (Tex.Civ.App.—Austin 1978, no writ): "It is the child's best interest, and not the interest of the biological father, which must be served by legitimation. § 13.21(c)."

The Texas Supreme Court in *In the Interest of T. E. T.,* 603 S.W.2d 793, cert. denied, 450 U.S. 1025, 101 S.Ct. 1732, 68 L.Ed.2d 220 (1980), considering the child's best interests said:

It is easy to understand her decision here that it would not be in the child's best interest for her to be turned over to the nineteen-year-old father and be reared by him in the small town where the illicit sexual activity occurred. On the other hand, the best interests of the

illegitimate child will more likely be served by her adoption into a family who will give her the stability of a normal, two-parent home. Moreover, adoption will remove the stigma under which an illegitimate child suffers.

We have carefully reviewed all the evidence and find no abuse of discretion by the trial judge in denying the petition for voluntary legitimation. *In the Interest of C.D.V.*, 589 S.W.2d 543 (Tex.Civ.App.—Amarillo 1979, no writ).

■ The first point of error is overruled.

In his second point of error, the biological father urges:

Section 13.21, Voluntary Legitimation, Family Code, V.A.T.S., is unconstitutional in that it violates the equal protection and due process clause of the fourteenth amendment to the United States Constitution.

This contention has been overruled by the Texas Supreme Court in *In the Interest of T. E. T.*, supra. There the court said:

The narrow issue before us is whether the gender-based distinction of the Texas statutory scheme for establishing status as a parent is substantially related to the important state objective of promoting the best interest of children born out of wedlock and is substantially related to the achievement of this objective. We hold that it is so related.

\* \* \* \* \* \*

The biological father was given timely notice of the proceedings to terminate the mother's parental rights and, in response, brought suit as permitted under the Texas Family Code to legitimate the child. He thus had the procedural due process required by *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972).

The second point of error is overruled.

■ Next, appellant argues that the court erred in overruling his motion for amended or more specific findings of fact and conclusions of law.

The court in *City of Fort Worth v. Bewley*, 612 S.W.2d 257 (Tex.Civ.App.—East-land 1981, writ ref'd n. r. e.), considering such a point of error, said:

Additional findings are not required where the requests do not relate to ultimate or controlling issues, or where they conflict with the original findings of fact which were made and filed by the trial judge. *State v. Wiergate Lumber Company, Inc.*, 582 S.W.2d 258 (Tex.Civ.App.—Beaumont 1979, writ ref'd n. r. e.).

In the case at bar, the additional findings and conclusions either conflict with the original findings and conclusions, or do not relate to the ultimate or controlling issue in controversy. The point of error is overruled.

■ Finally, in a supplemental brief the biological father contends that:

Section 13.21, Voluntary Legitimation, Family Code, V.A.T.S., is unconstitutional in that it violates Texas Constitutional Article 1, Section 3a, the Texas equal rights amendment.

The amendment states:

Equality under the law shall not be denied or abridged because of sex, race, color, creed or national origin. This Amendment is self-operative.

The court in *Mercer v. Board of Trustees, North Forest Independent School District*, 538 S.W.2d 201 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n. r. e.), considered whether a regulation regarding school hair length violated the Texas Equal Rights Amendment. After thorough consideration and comparison of similar enactments by other jurisdictions as well as federal court decisions the court said:

We cannot agree with the Supreme Court of Washington that the ERA admits of no exceptions to its prohibition of sex discrimination. Any classification based upon sex is a suspect classification, and any law or regulation that classifies persons for different treatment on the basis of their sex is subject to strictest judicial scrutiny. Any such classification must fall unless the party defending it can show that it is required by (1) physical characteristics, (2) other constitution-

ally protected rights such as the right of privacy, or (3) other "compelling reasons." With respect to "physical characteristics" we are simply recognizing the facts of life. For us to adjudicate that women are men would be as futile as it would be absurd. Neither the ERA nor the rights established by it require us to construe it so as to deny sexual or reproductive differences between the sexes. Nor does the ERA require that such rights so established (and so long denied) be enforced where they come into conflict with other basic fundamental constitutionally-protected rights such as that of privacy. To justify a suspect classification by "compelling reasons" places the burden of proof and persuasion on the party defending the classification.

We hold that Tex.Fam.Code Ann. § 13.21 (Vernon Supp. 1981) meets the "other compelling reasons" test as set forth in *Mercer* and, therefore, does not violate the Texas Equal Rights Amendment. The compelling reason is the important state objective in promoting the best interest of children born out of wedlock.

As stated by the court in *In the Interest of T. E. T.*, supra:

> (T)he State has a legitimate interest in protecting the children who are born as a result of pre-marital sexual activity. The mother, by virtue of her pregnancy, is automatically responsible for the child. She has the physical burdens and responsibilities of the pregnancy. She can choose to abort the child or she may carry it full term. The State has a substantial interest in encouraging the unwed mother to properly care for the child by assuring her that her wishes as to the disposition of the child will not, absent her consent or a finding of the child's best interest, be subject to the absolute veto of the biological father. This statute is substantially related to the achievement of that interest.

On the other hand, the biological father is not automatically responsible for the child. He may not have an interest in legitimating the child. He may not promptly disclose his interest in the child. In most situations, he can wait until after the child is born before committing himself. While the mother who is unmarried and pregnant is trying to figure out what she will do with the child, the father is totally free from any responsibility with respect to the child. To classify him as a parent simply because he is the biological father would give him a powerful club with which he could substantially reduce the options available to the unmarried mother. All must agree that an unmarried fourteen-year-old high school freshman has a serious problem when she discovers she is pregnant and she needs all the options that the State can properly make available to her.

The court in *In the Interest of K.*, 535 S.W.2d 168, cert. denied, 429 U.S. 907, 97 S.Ct. 273, 50 L.Ed.2d 189 (1976) said:

> There is a rational basis for the state, which has an interest in securing stable homes and supportive families for children, to distinguish between the father who has accepted the legal and moral commitment to the family and the father who has not done so.... Texas law offers the biological father of an illegitimate child the opportunity to prove ... that he should not be treated differently from fathers legally committed to the mothers of their children.... Thus S.D.A. sought and received a fair hearing.... the denial of his petition for parental status was shown to be in the best interest of the child. His rights have been respected. The rights of society and baby girl K permit him nothing more.

The point of error is overruled.

Our holding on the points of error presented by appellant make it unnecessary to consider appellee's cross-point contending that appellant did not comply with the requirements of Tex.Fam.Code Ann. § 13.21 (Vernon Supp. 1981).

The judgment is affirmed.