In the Interest of Unnamed Baby
McLEAN, a Child, Petitioner.

No. C–4782.

Supreme Court of Texas.

Feb. 11, 1987.

Rehearing Denied April 1, 1987.

Holly Crampton, Crampton, Crampton &
Estrada, Wichita Falls, for petitioner.

David K. Phillips, Anderson & Rodri-
guez, Barry Macha, Dist. Attys. Office,
Jeanmarie Baer, Ass't Dist. Atty., Marty
Cannedy, Merkle & Cannedy, Wichita Falls,
for respondent.

KILGARLIN, Justice.

The Texas Equal Rights Amendment,
Tex. Const. art. I, § 3a, was adopted in
1972. This case calls upon us to make an
initial interpretation of the extent of its
guarantees. In 1983, Laura McLean,
unwed, gave birth to a child. The undis-
puted father of the child, Billy Dean Wise,
was then, and still remains, married to
another woman. McLean decided to allow
the infant to be adopted and the prospec-
tive parents brought suit to terminate the
parent-child relationship as to both McLean
and Wise. Wise filed a cross-action for
legitimation, seeking managing conserva-
torship. The would-be adoptive parents
then took a non-suit and McLean filed a
general denial, opposing Wise's legitima-
tion request and asking that no conservator
be appointed. The Child Welfare Unit of
Wichita County Family Court Services in-
tervened, seeking managing conservator-
ship of the child, supported by McLean's
affidavit urging that the child be placed
with the Child Welfare Unit and stating
that Wise was an unfit person to care for
the child.

After trial to the court, the Child Wel-
fare Unit was appointed managing conser-
vator and Wise's suit for legitimation was
denied. Wise appealed and a divided court
of appeals affirmed the trial court judg-
ment. 697 S.W.2d 479. Wise filed this
application for writ of error, alleging viola-
tions of both the United States and Texas

Constitutions, because he was forced to prove that legitimation would be in the child's best interest.[1] Based on the Texas Equal Rights Amendment, we reverse the court of appeals' judgment.

Article I, section 3a, of the Texas Constitution provides that "[e]quality under the law shall not be denied or abridged because of sex, race, color, creed, or national origin." The first step in a case invoking this provision is to determine whether equality under the law has been denied. Any discrimination which occurred in the instant case is clearly "under the law" because it is required by state statute. Our next inquiry is whether equality was denied *because of* a person's membership in a protected class of sex, race, color, creed, or national origin.

Thus, the task in this case is to examine the Family Code to see if it treats Wise differently because he is male. When a child is born to a woman not married to the child's father, she automatically exercises all of the rights, duties, and privileges of the parent-child relationship. Tex.Fam. Code Ann. § 12.04 (Vernon 1986). Circumstances are different for a man who is not married to the child's mother: the father has all of those parental rights, duties, and responsibilities *only if the mother consents.* Tex.Fam.Code Ann. § 13.21(b) (Vernon 1986). Should the mother deny her consent, she pits the acknowledged father against the state: he must convince the trier of fact that legitimation best serves the child's interest if his paternity is to be legally recognized. Tex.Fam.Code Ann. § 13.21(c) (Vernon 1986). But, a man seeking to terminate a mother's parental rights finds the burden placed on him to prove that the child's best interest compels severing the child's relationship with the mother. Without maternal consent or meeting a higher burden of proof, the father has no rights in regard to his own child. Mothers are never subjected to such a proceeding; a woman, until her rights are terminated, exercises her parental prerogatives regardless of the father's veto. This is a gender-based distinction because only men are required to satisfy the "best interest" test before being recognized as a parent.

Having determined that the challenged statute discriminates on the basis of gender, we next focus on whether such discrimination is prohibited by the Equal Rights Amendment. At the outset, we note that federal precedent is not controlling when considering a case under the Texas Equal Rights Amendment. Moreover, no federal constitutional counterpart exists, efforts to secure ratification of a national E.R.A. having met with a lack of success. Therefore, we decide this case on independent state constitutional grounds.

We decline to give the Texas Equal Rights Amendment an interpretation identical to that given state and federal due process and equal protection guarantees. Both the United States Constitution and the Texas Constitution had due process and equal protection guarantees before the Texas Equal Rights Amendment was adopted in 1972. U.S. Const.Amend. V; XIV, § 1; Tex. Const. art. I, §§ 3, 13, 19. If the due process and equal protection provisions and the Equal Rights Amendment are given identical interpretations, then the 1972 amendment, adopted by a four to one margin by Texas voters, was an exercise in futility. *See* Schoen, *The Texas Equal Rights Amendment in the Courts —1972–1977: A Review and Proposed Principles of Interpretation,* 15 Hous.L. Rev. 537 (1978).

■ It is axiomatic that constitutional provisions are interpreted in such a manner

---

1. § 13.21. Voluntary Legitimation

  \*   \*   \*   \*   \*   \*

(b) The court shall enter a decree designating the child as the legitimate child of its father and the father as a parent of the child if the court finds that:

  \*   \*   \*   \*   \*   \*

(3) the mother or the managing conservator, if any, has consented to the decree.

(c) The requirement of consent of the mother is satisfied if she is the petitioner. If the entry of the decree is in the best interest of the child, the court may consent to the legitimation of the child in lieu of the consent of the mother or managing conservator.

Tex.Fam.Code Ann. § 13.21 (Vernon 1982).

as to give effect to every phrase of the document. *Hanson v. Jordan,* 145 Tex. 320, 198 S.W.2d 262 (1946). Similarly, no provision ordinarily duplicates another, and the language used is presumed to have been carefully selected. *Cramer v. Sheppard,* 140 Tex. 271, 167 S.W.2d 147 (1943). Instead of rendering the added guarantees meaningless, we conclude that the Equal Rights Amendment is more extensive and provides more specific protection than both the United States and Texas due process and equal protection guarantees. We do not question the wisdom behind a constitutional provision, *Lewis v. Independent School District of City of Austin,* 139 Tex. 83, 161 S.W.2d 450 (1943), but instead give each protection the dignity and effect intended. *Koy v. Schneider,* 110 Tex. 369, 218 S.W. 479 (1920), *op. on r'hng,* 110 Tex. 394, 221 S.W. 880 (1920).

Our Bill of Rights is not made up of a series of one-dimensional rules, to be applied blindly, but instead declares a guiding norm and principle to be applied and interpreted by the courts. We thus choose not to adopt a *per se* standard which would automatically invalidate gender-based distinctions, but rather seek a standard to be used to reach the evils which it was designed to combat. Our reading of the Equal Rights Amendment elevates sex to a suspect classification. Sex is clearly listed in the amendment along with other classifications afforded maximum constitutional protection.

The appropriate standard is thus one which recognizes that the Equal Rights Amendment does not yield except to compelling state interests. Further, it is not enough to say that the state has an important interest furthered by the discriminatory law. Even the loftiest goal does not justify sex-based discrimination in light of the clear constitutional prohibition. Under our model of strict judicial scrutiny, such discrimination is allowed only when the proponent of the discrimination can prove

that there is no other manner to protect the state's compelling interest. *Mercer v. Board of Trust, North Forest Independent School District,* 538 S.W.2d 201 (Tex. Civ.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.).

■ In this case, the state no doubt has a significant interest in protecting the welfare of a child born to a mother not married to the child's father. As this court has previously recognized:

> [T]he State has a legitimate interest in protecting the children who are born as a result of pre-marital sexual activity. The mother, by virtue of her pregnancy, is automatically responsible for the child. She has the physical burdens and responsibilities of the pregnancy. She can choose to abort the child or she may carry it full term. The State has a substantial interest in encouraging the unwed mother to properly care for the child by assuring her that her wishes as to the disposition of the child will not, absent her consent or a finding of the child's best interest, be subject to the absolute veto of the biological father.

*In the Interest of T.E.T.,* 603 S.W.2d 793, 797 (Tex.1980).[2]

Nevertheless, the state's interest can be protected without discriminating solely on the basis of sex. The state goal of protecting children's welfare is better served by keying that interest to the father's relationship to the child. A father who steps forward, willing and able to shoulder the responsibilities of raising a child should not be required to meet a higher burden of proof solely because he is male.

Because we hold that sections 13.21(b) and (c) of the Texas Family Code violates the Texas Constitution, we need not reach the federal law issues in this case. We reverse the judgment of the court of appeals and remand this cause to the trial court so that it can declare Wise's parental rights, if any, and resolve the conservator-

---

**2.** *In the Interest of T.E.T.,* 603 S.W.2d 793 (Tex. 1980), dealt with the validity of Section 13.21 of the Texas Family Code when judged against the United States Constitution. In holding that the statute did not violate the federal Constitution, the court did not consider the applicability of the Texas Equal Rights Amendment or the appropriate standard to be used in the face of an Article I, § 3a challenge. 603 S.W.2d at 794 n. 2.

ship issue without regard to sex. Texas Family Code section 14.01 (Vernon 1986) provides an adequate basis for this determination. *In re Baby Girl S,* 628 S.W.2d 261 (Tex.App.—Eastland 1982, writ ref'd n.r.e.), *jdgm't vacated and cause remanded after cert. granted,* 460 U.S. 1074, 103 S.Ct. 1760, 76 L.Ed.2d 337 (1983), is disapproved to the extent that it conflicts with this holding.

GONZALEZ, J., files a concurring and dissenting opinion in which WALLACE, J., joins.

GONZALEZ, Justice, concurring and dissenting.

I concur with the part of the opinion that adopts strict scrutiny as the standard of review for gender-based discrimination under the Texas Equal Rights Amendment. Tex. Const. art. I, § 3a. I disagree, however, that the cause should be remanded to the trial court for further proceedings. I would hold that the trial court abused its discretion and render judgment that Wise is the legitimate father of the child. I would also terminate the mother's parental rights and name Wise managing conservator.

Within two days of the baby's birth, Wise made arrangements to pay the hospital bill and began his efforts to get custody of his child. Because the child's mother desired that the child be adopted rather than be raised by his father, this unfortunate chain of events began and the child was placed in a foster home, where he is today. It has been almost four years since the child was born and Wise has been denied every effort to establish an ongoing relationship with his son. His offer to support the child was denied and his efforts to visit his little boy have been thwarted by the State. It is time to end this nightmare.

The record reflects the following: Dr. Leon Morris, a clinical psychologist, testified that he examined Wise and interviewed Wise's wife and three sons. He concluded that Wise is emotionally and mentally well qualified to raise his son. Carolyn Wise testified that her husband has good parenting skills. He is a loving father and husband who participates in his boys' activities such as baseball and scouts, camping and fishing.

Carolyn's nursing supervisor, Michelle Watson and her husband, Garri Watson, testified that they had known the Wise family for about four years and they described Wise as out-going, likable and good with children. Wise's children testified that they would welcome the baby into their home. Based on this and other testimony, the trial court made the following findings of fact:

1. Wise has provided for the emotional and physical needs of his children. Wise has not abused, mistreated, or neglected his children and has provided proper parental guidance to them. He has provided the proper love, care, discipline, food, shelter, clothing, and other physical needs that his children required.

2. Wise has shown favorable parental abilities. He raised his children from infancy through adolescence and his children are engaged in sports and other school activities, have average to above average grades, and exhibit good citizenships.

3. Wise is stable. He has been married to his wife for seventeen years. Marital difficulties developed during February 1982 and continued to September 1982. He and his wife reconciled their differences in September 1982 and have lived together as husband and wife since that date without serious marital difficulties.

4. Wise has provided for, and can continue to provide for, the financial needs of his children.

5. Wise desires to take the child in question into his home and provide for his needs and welfare.

For these reasons, I would not further postpone the date that Wise can start nurturing a relationship with his son whom he has not seen since birth. By the court remanding the case, it is possible for the mother to string this case out for a few more years with further proceedings and appeals. This certainly would not be in the best interest of the child.

The would-be adoptive parents have relinquished any claim to the child by taking a non-suit on the case. The mother signed an affidavit of her inability to care for the child and expressed the desire that the child be adopted. There is a presumption that the interests of a minor are best served by award of its custody to its natural parents. The burden of proof upon the issue of the best interest of the child is upon the one seeking to deprive the natural parents of custody. *Herrera v. Herrera*, 409 S.W.2d 395, 396 (Tex.1966); *Gunn v. Cavanaugh*, 391 S.W.2d 723, 726 (Tex. 1965). This burden has not been met.

Wise is not blameless in this ordeal but I believe it is time to end this episode so everyone concerned can get on with their lives. At a time when the State is making great efforts to locate absentee parents and hold them accountable for support of their children, it is ironic that the State has spent so much time and energy in denying a father, who has voluntarily stepped forward, his lawful rights and obligations as a parent.

WALLACE, J., joins in this opinion.

ROBERTSON, dissenting on Motion for Rehearing.

I respectfully dissent. The Respondent now calls our attention to *In re Baby Girl S*, 628 S.W.2d 261 (Tex.App.—Eastland 1982, writ ref'd n.r.e.),[1] a case with virtually identical facts to this case but which upheld the validity of § 13.21 of the Family Code. In *Baby Girl S*, the biological father challenged the constitutionality of § 13.21 under the Texas Equal Rights Amendment. Utilizing the strict scrutiny standard of review, the court held that § 13.21 did not violate the Texas Equal Rights Amendment because of the important state objective in promoting the best interest of children born out of wedlock. *In re Baby Girl S* at 264. That case cannot be distinguished and the contrary result cannot be reconciled. I am persuaded by the Respondent's argument and the reasoning of the court in *Baby Girl S* that the special difficulties a mother of an illegitimate child faces from the moment of conception justify the differential treatment of the mother and biological father in § 13.21.

The classification about which Petitioner complains has less to do with gender than it does the recognition of a simple fact of life: only a woman can conceive, carry and give birth to a child. It is for this reason that the mother is the easily identifiable parent who must automatically assume responsibility for the child. From the moment of conception, it is the woman, and the woman alone, who bears the physical, emotional and financial burden of her pregnancy. The biological father, on the other hand, is totally free from any responsibility with respect to the child unless and until he chooses to step forward or some action is taken against him. Meanwhile, the mother is constantly faced with decisions about how to best care for the child. As this court has previously recognized, and as the majority acknowledges:

> [T]he State has a legitimate interest in protecting the children who are born as a result of pre-marital sexual activity. The mother, by virtue of her pregnancy, is automatically responsible for the child. She has the physical burdens and responsibilities of the pregnancy. She can choose to abort the child or she may carry it full term. The State has a substantial interest in encouraging the unwed mother to properly care for the child by assuring her that her wishes as to the disposition of the child will not, absent her consent or a finding of the child's best interest, be subject to the absolute veto of the biological father.

*In the Interest of T.E.T.*, 603 S.W.2d 793, 797 (Tex.1980).

The majority then holds that "[t]he state goal of protecting children's welfare is better served by keying that interest to the father's relationship to the child." Section 13.21 does in fact provide for consideration of the father's relationship to the child and it is the evidence of that relationship that led to the trial court's determination that it

---

**1.** On rehearing, the court has overruled this     case.

was not in the child's best interest to be legitimated as to Wise. Contrary to the characterization of Wise as a "father who step[ped] forward, willing and able to shoulder the responsibility of raising a child," Wise did not "step forward" until after the child was born and he was informed of the adoption proceedings, although he was told by McLean that she was pregnant several months prior to birth of the child. Further, there is no credible evidence that Wise offered to support the child or that he made arrangements to pay McLean's medical bills. In fact, the hospital bill remains unpaid. More importantly, however, the record reflects that Wise is a diagnosed chronic paranoid schizophrenic for which he has been rated 100% disabled by the Veterans Administration and for which he now receives $1,400 per month in disability benefits. He is unable to hold down a steady job due to his violent temperament. His wife testified that he has had at least seventy-one jobs from the date of his discharge from the service, May 15, 1970, and the date of trial, April 10, 1984. He has a history of being unable to get along with people dating back to his parents and schoolteachers. He dropped out of high school in the tenth grade because of problems with his teachers. At the time of the trial of this cause, three felony indictments were pending against Wise, one of which was dismissed the day of trial when Wise made restitution. These are all factors which should be taken into consideration when awarding custody, visitation or support of the child.

Finally, I disagree with the concurring opinion which would render judgment legitimating the child as to Wise and awarding custody to him. For the reasons set out above, I question whether Wise is a fit parent. Further, almost three years have elapsed since the trial court made its findings of fact, and circumstances may have changed for the worse. Additionally, because Laura McLean has not relinquished her parental rights, she is entitled to seek custody. The child's circumstances may be such that removal from his foster parents' home would not be advisable. All of these matters should be addressed by the trial court before any custody, visitation or support determination is made.

Because I am of the opinion that the State has sustained its burden of justifying the differential treatment in § 13.21, I would affirm the judgments of the lower courts.

HILL, C.J., and CAMPBELL and SPEARS, JJ., join in this dissenting opinion on rehearing.