**CONCUR; DISSENT and Opinion Filed August 8, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-24-00216-CR**

**EX PARTE ALEJANDRO RIVERA SAAVEDRA**

**On Appeal from the County Court**
**Kinney County, Texas**
**Trial Court Cause No. 11350CR**

## CONCURRING AND DISSENTING OPINION
Before Justices Reichek, Carlyle, and Miskel
Concurring Opinion by Justice Miskel

This case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. I agree with the majority that under Rule 41.3 of the Texas Rules of Appellate Procedure we are bound to follow the Operation Lone Star (OLS) precedent of the Fourth District Court of Appeals. TEX. R. APP. P. 41.3. We must stand in the shoes of the transferor court so that this transfer case will not produce a different outcome. *Id.* 41.3 cmt.

However, while I acknowledge that we are required to follow the OLS precedent of the Fourth District Court of Appeals, I write separately for three reasons:

(1)     This case involves new arguments and evidence compared to the prior OLS cases decided by the Fourth District Court of Appeals. Because it concerns issues of first impression that are now being decided by a different court of appeals, the transfer of this case is problematic.[1]  However, there is no mechanism by which we may return transferred cases involving matters of first impression back to the transferring court of appeals.

(2)     I believe this case (and each similar case) must be analyzed by examining the record, reviewing the evidence that was actually admitted in the light most favorable to the habeas court's findings, and affirming the habeas court's ruling unless it was an abuse of discretion.  I disagree with the majority's suggestion that resolution of the ultimate question in this case turns only on a de novo application of the Fourth District Court of Appeals' prior legal standards.  Analysis of OLS cases cannot be rubber-stamped.

(3)     Finally, I disagree with how the Fourth District Court of Appeals analyses sex-discrimination claims under the Texas Constitution in OLS cases.

I note that Rivera Saavedra has raised only an as-applied challenge to OLS. He concedes the general constitutionality of the Proclamation but asserts that the Proclamation is unconstitutional as applied to his particular facts and circumstances. *See State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 910 (Tex. Crim. App. 2011).

---

[1] *See also Ex parte Vallesteros*, No. 06-24-00040-CR, 2024 WL 1632070, at *10 (Tex. App.—Texarkana Apr. 16, 2024, pet. filed) (mem. op., not designated for publication) (Rambin, J., concurring and dissenting) (noting case has three things no prior Fourth District Court of Appeals OLS decision has had).

–2–

Therefore, nothing in this case should be construed as a determination that OLS is generally unconstitutional.

## I.      Procedural Background

On August 7, 2021, pursuant to OLS, a Texas Department of Public Safety (DPS) trooper arrested six men, including Rivera Saavedra, who is a Cuban national, in Kinney County, for trespassing on private property. As a result, Rivera Saavedra was charged by information with misdemeanor criminal trespass under §§ 30.05 and 12.50 of the Texas Penal Code. The information alleged that the offense was committed in an area that was subject to a declaration of a state of disaster made by the Governor pursuant to § 418.014 of the Texas Government Code.

Rivera Saavedra filed a verified pretrial application for a writ of habeas corpus, claiming that the State was restraining his liberty and seeking discharge and dismissal of the charges against him. He sought the pretrial writ of habeas corpus on the grounds that the State had violated his equal-protection rights under article 1, § 3a, of the Texas Constitution and the Fourteenth Amendment of the United States

Constitution by engaging in selective enforcement[2] based on sex discrimination[3] because: (1) the State does not enforce criminal-trespass laws against similarly situated women; (2) OLS is motivated by a discriminatory purpose; and (3) the State cannot adequately justify its discriminatory purpose under either the requirements of either intermediate scrutiny under the United States Constitution or strict scrutiny under the Texas Constitution. Attached to his application were the following exhibits:

- The Governor's proclamation declaring a state of disaster in thirty-four counties located on the Texas–Mexico border.

- The declaration of Claudia Molina of the Lubbock Private Defender's Office stating, in part, she is unaware of any women who have been prosecuted for misdemeanor trespass as a part of OLS.

- A notice of stipulation filed in *State v. Gonzales-Morales*, No. 2022CRB000722L1, County Court, Webb County, Texas, in which the State stipulated that "women are not prosecuted for trespass as part of [OLS], even when they are found trespassing" and Gonzalez-Morales stipulated that "women require separate housing and staffing separate from adult male detainees."

---

[2] I note that Rivera Saavedra has referred to his claim as a selective-prosecution claim throughout the habeas corpus proceedings even though he argues the State has chosen to selectively enforce its trespass laws based on the sex of the defendant. While courts have at times deployed the terms "selective prosecution" and "selective enforcement" interchangeably, "selective prosecution" and "selective enforcement" are distinct claims. *Ex parte Marcos-Callejas*, No. 04-23-00327-CR, 2024 WL 2164653, at *2 (Tex. App.—San Antonio May 15, 2024, no pet.). Selective prosecution occurs when, from among the pool of people referred by police, a prosecutor pursues similar cases differently based on an impermissible consideration. *Id.* On the other hand, selective enforcement occurs when law-enforcement officials make decisions regarding who to investigate, arrest, or refer for potential prosecution based on an impermissible consideration such as race or gender. *Id.* Accordingly, I will refer to Rivera Saavedra's claim as a selective-enforcement claim throughout my concurring and dissenting opinion.

[3] Although the parties and the habeas court refer to this as a case involving "gender discrimination," the claims involve discrimination based on biological sex. Further, the text of the Texas Constitution protects equality on the basis of "sex." TEX. CONST. art. 1, § 3a. Therefore, I refer to the claims in this case as sex-discrimination claims throughout my concurring and dissenting opinion.

–4–

- The affidavit of Tom Schmerber, Sheriff of Maverick County, Texas, stating, in part, that he was told by DPS that only men would be arrested for criminal trespass pursuant to OLS even though the Maverick County jail has the ability to house females.

The habeas court granted the application and ordered the parties to submit evidence. Rivera Saavedra filed a summary of his evidence from his application and attached the following additional exhibits:

- A letter from the Governor to OLS judges that outlined his policy objectives and the funding for OLS.

- Two news articles relating to OLS.

- A letter from the Governor to law enforcement agency heads relating to the transfer of funds to support OLS.

- The meeting minutes of the Texas Board of Criminal Justice (TBCJ) summarizing an update provided by the Texas Department of Criminal Justice (TDCJ) executive director about OLS.

- A transcript of the testimony of Molina, DPS South Texas Region Captain Joel Betancourt, Omar Saucedo (a social worker), and DPS troopers Osvaldo Guajardo, Brandon Aquino, and Valentin Cantu during a writ hearing held in *State v. 11/18/2022 OLS Docket*, No. 13763CR, County Court, Kinney County Texas.

- An email from Captain Betancourt to other DPS officers outlining the OLS policy and providing examples of a few possible scenarios that might be encountered.

- An order in *State v. Cirino Gregeda*, No. 13784CR, County Court, Kinney County, Texas, granting relief in a habeas corpus proceeding and ruling that the OLS policy is discriminatory and the State does not have a valid justification.

- Personal bonds that were given to female defendants in Kinney County criminal-trespass cases.

The Kinney County Attorney's Office filed a response on behalf of the State arguing the criminal-trespass statute is facially neutral, Rivera Saavedra has not shown that equal protection is being denied on a state-wide basis, and the State's policy serves a legitimate state interest. Attached to the State's response were the following:

- The affidavit of DPS South Texas Regional Director Victor Escalon explaining why non-elderly males were arrested from approximately July 20, 2021, until November 2022 for criminal trespass, but not women, family units, or the elderly. In particular he explained that DPS personnel were not able to easily distinguish between female trespassers and those being trafficked as well as the need to keep unaccompanied children and family units together.[4]

- The affidavits of several border-county residents describing the dangers to the life and property of the landowners, and the dangers to the health and life of the trespassers.

- A transcript of the testimony of DPS South Texas Region Captain Betancourt during a writ hearing held in *State v. Excerpt of 11/18/2022 OLS Docket*, County Court, Kinney County Texas.

- Several criminal complaints, probable-cause affidavits, informations, and arrest warrants among other legal documents against women for criminal trespass in Kinney County beginning in September 2023.

- Numerous photographs depicting acts of criminal trespass, deceased individuals and animals, and destruction of property.

---

[4] Further, I note that, while DPS South Texas Regional Director Escalon's affidavit reflects that in November 2022—over a year after Rivera Saavedra was arrested—the State changed its OLS policy and has been housing adult females for criminal trespass and using the county jails in Zapata, Webb, Jim Hogg, and Maverick counties, the Fourth District Court of Appeals has already held, as a matter of law, that any such change has no bearing on an applicant's selective-enforcement claim, as the only evidence relevant to an applicant's selective-enforcement claim is that which existed at the time of the applicant's arrest. *Ex parte Barahona-Gomez*, No. 04-23-00230-CR, 2023 WL 6285324, at *2 (Tex. App.—San Antonio Sept. 27, 2020, pet. filed) (mem. op., not designated fro publication).

On January 20, 2024, the merits of the writ were tried by submission.[5]  In its order denying relief, the habeas court stated that all of the exhibits submitted by both parties were admitted into evidence.  The habeas court also made findings of fact, which are summarized as follows:

- Rivera Saavedra's claims are based on the implementation of the Texas criminal trespass statute at it relates to the border counties and illegal immigration, not as it is implemented throughout Texas.

- Governor Abbott has issued a Proclamation of Disaster for the border and it remains in effect.

- The Proclamation speaks for itself.

- The Governor's purpose as stated in the Proclamation speaks for itself.

- The affidavit of DPS South Texas Regional Director Escalon is admitted for the history of the OLS and is deemed truthful.

- Disregarding any hearsay, the affidavits of the landowners establish the validity of the declared emergency and disaster.

- OLS was established as a funding mechanism to support law enforcement in relation to the surge of crime on the border including

---

[5] Both the Texas Constitution and the Texas Government Code prohibit a court from rendering a judgment holding a statute unconstitutional until the Attorney General has been given notice of the challenge and has had a reasonable opportunity to inform the court of the State's position on the matter. TEX. CONST. art. 5, § 32; TEX. GOV'T CODE ANN. § 402.010.  Although the Texas Constitution and § 402.010 expressly refer to constitutional challenges to a *statute*, § 418.012 of the Texas Government Code provides that the governor may issue executive orders, proclamations, and regulations which have the force and effect of law, and some courts have interpreted them to also apply to constitutional challenges to executive orders. *See generally Ex parte Larue*, No. 12-20-00269-CR, 2021 WL 2816412, at *1 n.3 (Tex. App.—Tyler June 30, 2021, no pet.) (mem. op., not designated for publication) (noting that pursuant to § 402.010, it notified Texas Attorney General's Office of appellant's constitutional challenge to Governor's executive order but received no response from that office).  Here, the record does not show that the Texas Attorney General's Office was notified of Rivera Saavedra's challenge to the constitutionality of the Governor's proclamation when the matter was raised in the habeas court or on appeal.  Instead, the Kinney County Attorney's Office has been the sole representative and voice of the State with respect to the constitutionality of the Governor's proclamation in this case.  I would notify the Texas Attorney General's Office of Rivera Saavedra's constitutional challenge, send it copies of the parties' briefing, and permit it a period of time in which to respond.

human smuggling, trafficking, and trespass as it relates to an unprecedented number of illegal crossings of immigrants.

- The Texas border counties are rural.

- The Texas border counties' jails are small and unable to house the number of individuals arrested for crimes targeted by OLS.

- Because of the small jails, law enforcement made decisions on whether to charge under State law or whether to turn over to federal authorities for their prosecution those individuals detained on private property without the owner's permission.

- When those decisions were made, consideration was given not only to sex but also to who was traveling with whom, i.e., the family situation, age, and children.

- The factors taken into consideration were not treated individually but as a composite of the factors relating to the specific person.

- Included in the factors taken into consideration was the availability of space permitted under jail standards and whether the offense was a felony or a misdemeanor.

- Both sexes were arrested under OLS from its inception.

- Both men and women were released to federal authorities as opposed to just women.[6]

- The decisions made at the time of arrest were not based solely on sex.

- The charging decisions made by OLS law enforcement were done not with purposeful discrimination but to be able to immediately deal with the situation at hand during a state of emergency and disaster.

---

[6] I note that the habeas court's findings of fact states, "Both men and women were released to federal authorities as opposed to just men." However, it is clear from the record that this was a typographical error and the last word of the quoted finding was intended to be "women."

- There was a danger to life and property, lack of housing availability and a humanitarian purpose not to re-victimize trafficked individuals or deprive children of guardians.

- Law enforcement's actions further a legitimate governmental objective and interest.

The habeas court also made conclusions of law, summarized as follows:

- Rivera Saavedra established a prima facie claim of selective enforcement based on sex discrimination;

- The State has rebutted that prima facie claim; and

- The State met its burden of justification.

This interlocutory appeal of the habeas court's order denying Rivera Saavedra relief on the merits followed. *See Ward v. State*, 662 S.W.3d 415, 416 & n.2 (Tex. Crim. App. 2020) (concluding if habeas court denies relief on merits, defendant may file interlocutory appeal and noting whether defendant's grounds for relief are cognizable is different matter).

## II.    This Record Includes New Evidence and Arguments from the State

Rivera Saavedra claims that the habeas court's conclusions "hinged on its finding that the counties lacked housing for women" and the State failed to establish that its multi-billion-dollar budget did not allow it to increase detention capacity for women before his arrest. Both Rivera Saavedra and the majority rely on *Ex parte Aparicio*, 672 S.W.3d 696, 708 (Tex. App.—San Antonio 2023, pet. granted), and its progeny as support for the proposition that the habeas court erred when it concluded that the State rebutted Rivera Saavedra's claim of sex discrimination and that the State justified its OLS policy. I disagree with the claim that this case

–9–

involves the same arguments and evidence as the prior OLS cases decided by the Fourth District Court of Appeals and that resolution of the ultimate question in this case turns only on an application of these prior legal standards. *See Diamond v. State*, 613 S.W.3d 536, 544 (Tex. Crim. App. 2020) (standard of review for habeas rulings).

While I agree that prior OLS opinions from the Fourth District Court of Appeals have held that the State failed to meet its burden to justify a discriminatory policy, each of those cases was determined based on the specific arguments and evidence presented by the State, or the lack thereof. A review of these cases shows that the Fourth District Court of Appeals has not reached its conclusions solely as a matter of law:

- In *Ex parte Aparicio*, 672 S.W.3d at 711–16, the court of appeals noted that the State did not call any witnesses or introduce any evidence to support the State's argument that the emergency situation on the border justified its discriminatory actions and the facts were undisputed. It concluded that the habeas court never reached the merits of the case and remanded it so that the habeas court could have an opportunity to determine whether the State's discriminatory classification was justified.

- In *Ex parte Barahona-Gomez*, No. 04-23-00230-CR, 2023 WL 6285324, at *1 (Tex. App.—San Antonio Sept. 27, 2023, pet. filed) (mem. op., not designated for publication), the court of appeals reversed and remanded the case for an evidentiary hearing to allow the applicant to present a prima facie case, noting that the habeas court denied the application for habeas corpus without an evidentiary hearing and made an explicit finding based on the habeas judge's personal knowledge.

- In *State v. Gomez,* No. 04-22-00872-CR, 2023 WL 7552682, at *5 (Tex. App.—San Antonio Nov. 15, 2023, pet. filed), and *State v.*

–10–

*Garcia Compean*, No. 04-22-00886-CR, 2023 WL 8104870, at *1–2 (Tex. App.—San Antonio Nov. 22, 2023, pet. filed) (mem. op., not designated for publication), which were heard by the habeas court at the same time, the court of appeals noted that the State did not call any witnesses or introduce any evidence but relied on the applicants' evidence that included the Governor's proclamation and testimony that the counties implementing OLS do not have sufficient facilities to hold women detainees and concluded it was insufficient to justify the State's discriminatory policy.

- In *Ex parte Rodriguez Rodas*, No. 04-22-00885-CR, 2023 WL 8103194, at *1 (Tex. App.—San Antonio Nov. 22, 2023, pet. filed) (mem. op., not designated for publication), the court of appeals noted that the habeas court found there was no evidence that the discrimination based on sex served an important governmental objective, no evidence was offered to establish that the discrimination was substantially related to the achievement of important governmental objectives, and the State failed to produce evidence about the feasibility, or lack thereof, of an alternative.

- In *Ex parte Vasquez-Bautista*, 683 S.W.3d 504, 514 (Tex. App.—San Antonio 2023, pet. filed) (en banc), the court of appeals concluded the State failed to justify its discriminatory conduct because the State relied only on the Governor's proclamation and the parties' stipulation that women require separate housing from adult males detainees and, even though given the opportunity, it failed to present any evidence regarding the feasibility of the State's bearing the financial burden of arresting, housing, and prosecuting women, as it did by modifying its existing facilities to house male detainees.

- In *Ex parte Gonzalez-Morales*, No. 04-22-00629-CR, 2023 WL 8793121, at *3 (Tex. App.—San Antonio Dec. 20, 2023, no pet.) (mem. op., not designated for publication), the court of appeals concluded that the State failed to meet its burden of justifying the discriminatory conduct because, in other cases, the court of appeals had already rejected the State's reliance on the Governor's proclamation and testimony that the counties implementing OLS do not have sufficient facilities to hold women detainees as a compelling interest.

- In *Ex parte Molina Valencia*, No. 04-23-01044-CR, 2024 WL 1642923, at * (Tex. App.—San Antonio Apr. 17, 2024, no pet. h.), the court of appeals noted that the State did not call any witnesses or introduce any evidence at the habeas hearing to show how DPS's policy, pursuant to OLS, of arresting and referring men, but not similarly situated women, for prosecution is narrowly tailored or substantially related to its interest in protecting it citizens.

These cases were decided based on the evidence actually presented to the habeas courts to support the State's justifications for its policies. And the evidentiary record in this case differs from each of those cases.

In this case, the State offered two new humanitarian purposes—to avoid (1) re-victimizing trafficked individuals or (2) depriving children of guardians—as well as evidence that has not previously been addressed by the Fourth District Court of Appeals.[7] The State offered this evidence to rebut Rivera Saavedra's prima facie claim of selective enforcement, to show that the policy did not discriminate *because of* sex, and also to show justifications for the policy. The Fourth District Court of Appeals has not yet addressed whether evidence of these two new policy objectives rebuts a selective-enforcement claim.

### III. *Ex Parte Aparicio*'s Analysis Misses a Step

Because we are required to follow the Fourth District Court of Appeals' decision in *Ex parte Aparicio*, I must concur in the judgment. However, I believe

---

[7] As in the other Fourth District Court of Appeals' OLS decisions, the State also presented evidence and argued that its OLS policy was justified under both intermediate and strict scrutiny based on the Governor's proclamation, the lack of pretrial facilities to hold women, border security, and public health. I acknowledge that the Fourth District Court of Appeals has rejected the State's use of this evidence to justify policies that discriminate based on sex.

*Ex parte Aparicio* misapplied the analysis required for a sex discrimination claim under the Texas Equal Rights Amendment.

## A. Three Steps to Evaluate Sex-Discrimination Claims Under the Texas Constitution

The Texas Constitution provides heightened protection against sex-based discrimination. The Equal Rights Amendment specifies that sex, race, color, creed, and national origin are protected classes and grants additional protection against sex-based classifications. TEX. CONST. art. 1, § 3a; *Bell v. Low Income Women of Tex.*, 95 S.W.3d 253, 257, 262 (Tex. 2002); *Gomez*, 2023 WL 7552682, at *5. Therefore, a state equal-protection claim on the basis of sex discrimination is subject to strict scrutiny. *See Bell*, 95 S.W.3d at 257–58 (citing *In re McLean*, 725 S.W.2d 696, 697 (Tex. 1987)).

Evaluating an Equal Rights Amendment violation is a three-step process. *Id.* at 257 (citing *In re McLean*, 725 S.W.2d at 697). Step One—a court decides whether equality under the law has been denied. *Id*. Step Two—the court must determine whether equality under the law was denied *because of* the person's membership in a protected class of sex, race, color, creed, or national origin. *Id*. Step Three—if a court concludes that equality was denied because of a person's membership in a protected class, the challenged action cannot stand unless the government proves it is narrowly tailored to serve a compelling governmental interest. *Id*.

## B.   Related Example—*Batson* Challenges

A related example is useful to illustrate how courts apply the three-step process to determine whether government actions violate the Equal Rights Amendment.  In *Batson*[8] challenges relating to sex discrimination, the movant must first make a prima facie case that the State used sex-based criteria in exercising peremptory strikes.  *Benito Guzman v. State*, 85 S.W.3d 242, 246 (Tex. Crim. App. 2002).  Then, the burden shifts to the State to articulate a sex-neutral explanation for each strike.  *Id*.  The State can even express a mix of both discriminatory and neutral motives—"dual motivation is a defense which rebuts the opponent's prima facie case of purposeful discrimination."  *Id*. at 249, 253.  Finally, if a sex-neutral explanation is offered, the trial court must decide whether the opponent has proved purposeful discrimination.  *Id*. at 246.

In *Benito Guzman*, the State's attorney explained that he struck a potential juror because he was single, male, had no children, and fell asleep or shut his eyes for extended periods of time.  The Texas Court of Criminal Appeals held that, although sex was *a* reason for the strike, the record did not show that the trial court completed steps two or three of the *Batson* process to determine whether sex discrimination was the "controlling" reason for the strike, so the case was remanded for further proceedings.  *Id*. at 254–55.

---

[8] *Batson v. Kentucky*, 476 U.S. 79 (1986).

**C.** *Ex Parte Aparicio*'s Abbreviated Two-Step Analysis in OLS Cases

In *Ex parte Aparicio*, the Fourth District Court of Appeals impliedly held that the second "because-of" step does not apply to a strict-scrutiny analysis of OLS. *Ex parte Vallesteros*, No. 06-24-00040-CR, 2024 WL 1632070, at *11 (Tex. App.—Texarkana Apr. 16, 2024, pet. filed) (mem. op., not designated for publication) (Rambin, J., concurring and dissenting). In *Ex parte Aparicio*, the Fourth District Court of Appeals set out a two-step process for analyzing selective-enforcement claims. That court held that the defendant in a criminal case bears the burden of establishing a prima facie claim of selective enforcement by showing the law-enforcement policy had a discriminatory effect and that it was motivated by a discriminatory purpose. *Ex parte Aparicio*, 672 S.W.3d at 708. Under *Ex parte Aparicio*, the State does not have an opportunity to rebut the defendant's prima facie case of sex discrimination by showing that the alleged discriminatory treatment was not *because of* the defendant's sex. *Ex parte Aparicio* held that, once an applicant makes a prima facie showing of an equal-protection violation (step one), the burden shifts to the State to justify the discriminatory treatment (step three). *See id.*. Then, under *Ex parte Aparicio*'s progeny, the Fourth District Court of Appeals has determined that none of the justifications so far offered by the State have been narrowly tailored enough to survive strict scrutiny.

**IV.** **The State Prevailed Under a Three-Step Analysis, but Failed under *Ex Parte Aparicio*'s Two-Step Analysis**

On appeal, Rivera Saavedra argues the habeas court erred when it denied his application for a writ of habeas corpus because he properly raised his equal-protection challenge in a pretrial application for a writ of habeas corpus, he established a prima facie claim of selective enforcement, and the State failed to justify its discriminatory OLS policy. I would analyze his second and third arguments differently from the majority.

**A.** **Step One—Rivera Saavedra Made a Prima Facie Case**

The record shows that the habeas court expressly concluded that Rivera Saavedra met his burden to establish a prima facie claim of selective enforcement based on sex discrimination

**B.** **Step Two—The Habeas Court Found that the State's Evidence Rebutted Rivera Saavedra's Claim**

Once the habeas court concluded that Rivera Saavedra had established a prima facie case of selective enforcement on the basis of sex, the habeas court was required to determine whether equality under the law was denied *because of* Rivera Saavedra's membership in a protected class. *Bell*, 95 S.W.3d at 257.

The habeas court expressly found that both sexes were arrested under OLS from its inception, both men and women were released to federal authorities as opposed to just men, and the decisions made at the time of arrest were not based solely on sex. It also expressly concluded that the State rebutted Rivera Saavedra's

prima facie claim of selective enforcement based on sex discrimination. It therefore rejected his claim that equality under the law was denied *because of* his sex (step two of *Bell*'s three-step process). Selective enforcement of criminal laws constitutes a denial of equal protection only upon a showing of a deliberate and intentional plan to discriminate. *See Richards v. League of United Latin Am. Citizens (LULAC)*, 868 S.W.2d 306, 313 n.7 (Tex. 1993). The habeas court found that the State's evidence rebutted the claim of intentional discrimination and therefore held that there was no equal-protection violation. In other words, the habeas court concluded that sex discrimination was not the "controlling" reason for the government's actions. *See, e.g.*, *Benito Guzman*, 85 S.W.3d at 254.

On appeal, Rivera Saavedra challenges the habeas court's denial of his application for a writ of habeas corpus on the basis that the habeas court erred when it concluded the State justified its OLS policy. That addresses only step three of the three-step process. He was required to challenge all possible grounds on which the habeas court might have relied when denying his application and he failed to do so. Nowhere in his brief on appeal does he argue the State failed to rebut his prima facie claim of selective enforcement or that the habeas court erred when reaching that conclusion. Further, as discussed elsewhere in this opinion, the record reflects that the State offered evidence and the habeas court made findings about additional reasons for the policy other than purposeful discrimination due to lack of detention capacity—people that received different treatment than Rivers Saavedra were

–17–

treated differently because they were older, traveling with children, or suspected to be sex-trafficking victims, not because they were women.

As a result, I would conclude that we are precluded from reversing the habeas court's order because Rivera Saavedra has not challenged all independent grounds that fully support the habeas court's order. *See Trevino v. City of San Antonio*, 685 S.W.3d 863, 867 (Tex. App.—San Antonio 2023, no pet.); *see also Marsh v. State*, 343 S.W.3d 475, 479 (Tex. App.—Texarkana 2011, pet. ref'd). In the absence of a challenge to all asserted grounds, an appellate court must accept the validity of the unchallenged independent grounds and affirm the adverse ruling. *See Trevino*, 685 S.W.3d at 867; *see also Marsh*, 343 S.W.3d at 479.

Further, affording almost total deference to the habeas court's factual findings, and viewing the evidence in the record in the light most favorable to the habeas judge's rulings, I would uphold the ruling because Rivera Saavedra has not shown that the habeas court abused its discretion in concluding that the State rebutted Rivera Saavedra's claim that equality under the law was denied *because of* his sex.

## C. Step Three—Whether the Government's Justification Was Narrowly Tailored

The habeas court evaluated the weight and credibility of the evidence and concluded that the State's policy was not *because of* purposeful discrimination under step two, so a court should not proceed to step three to evaluate whether a discriminatory policy survives strict scrutiny. However, under *Ex parte Aparicio*,

the government does not have the step-two chance to rebut the charge of purposeful discrimination. Once a defendant makes his prima facie case, the government must skip straight to the third step of proving that a discriminatory policy was narrowly tailored to serve a compelling governmental interest.

Rivera Saavedra argues the habeas court erred when it concluded the State justified its discriminatory OLS policy because it incorrectly applied the rational-basis standard instead of intermediate scrutiny or strict scrutiny. He also contends that the State failed to establish that its discriminatory policy survives either intermediate or strict scrutiny. Further, he claims that the habeas court's conclusions "hinged on its finding that the counties lacked housing for women" and the State failed to establish that its multi-billion-dollar budget did not allow it to increase detention capacity for women before his arrest.

Rivera Saavedra does not challenge the habeas court's findings of fact and, under the applicable standard of review, we must afford almost total deference to those factual findings if they are supported by the record, especially when those findings are based on credibility. *See Diamond*, 613 S.W.3d at 544. Accordingly, I review whether the habeas court's findings and the evidence support the habeas court's conclusion that the State justified its OLS policy.

I analyze the parties' arguments under strict scrutiny rather than intermediate scrutiny[9] because that is the more difficult of the two standards to satisfy. In order to justify its OLS policy under strict scrutiny, the State had to show that the policy was narrowly tailored to serve a compelling governmental interest. *See Bell*, 95 S.W.3d at 257.

### 1.    Compelling Government Interest

I begin with an analysis of the compelling governmental interest at issue—a humanitarian purpose to avoid re-victimizing trafficked individuals or depriving children of guardians. On appeal, Rivera Saavedra concedes that "the State's articulated interest is compelling."[10] Also, the habeas court made the following express fact findings that show the State's OLS policy served a compelling governmental interest and that support the habeas court's conclusion that the State's OLS policy was justified:

- OLS was established as a funding mechanism to support law enforcement in relation to the surge of crime on the border including human smuggling, trafficking, and trespass as it relates to an unprecedented number of illegal crossings of immigrants.

---

[9] A federal equal-protection claim on the basis of sex discrimination is subject to intermediate scrutiny. *Clark v. Jeter*, 486 U.S. 456, 461 (1988); *Ex parte Aparicio*, 672 S.W.3d at 708. When intermediate scrutiny applies, the State must demonstrate that the discriminatory classification is substantially related to an important governmental objective. *Clark*, 486 U.S. at 461; *cf. Ex parte Aparicio*, 672 S.W.3d at 708.

[10] Although the habeas court found that law enforcement's actions further a "legitimate governmental objective and interest," that finding is immaterial because Rivera Saavedra has conceded on appeal that "the State's articulated interest is compelling," which is the standard under strict scrutiny. *See Bell*, 95 S.W.3d at 257 (habeas court must determine whether law is narrowly tailored to serve a compelling governmental interest).

- There was a danger to life and property, lack of housing availability and a humanitarian purpose not to re-victimize trafficked individuals or deprive children of guardians.

In addition, the Governor's proclamation stated, in part:

- WHEREAS, on March 17, 2021, [Governor Abbott] expanded [OLS] to have DPS interview unaccompanied alien children to identify victims of human trafficking and gain actionable intelligence that will aid in the arrest of traffickers; and

- WHEREAS, the Biden Administration's immigration policies are failing Texans, causing a humanitarian crisis in many Texas communities along the border; and

- WHEREAS, the Biden Administration's open-border policies have . . . dramatically increased the risk of human trafficking . . . .

Further, in his affidavit, DPS South Texas Regional Director Escalon stated, in part:

- In July 2021, DPS personnel were directed not to arrest unaccompanied children or family units; and

- In August 2021, DPS personnel were directed not to arrest females for criminal trespass based on many factors including the inability to distinguish between females who were trespassing from those being smuggled or trafficked by their male companions.

The habeas court's express findings show that the particular evidence admitted in this case supported the habeas court's assessment that the State was not acting for a discriminatory purpose, but to protect children and trespassing females who might also be trafficking victims. Accordingly, deferring to the habeas court's findings of fact and viewing the evidence in the light most favorable to the habeas court's ruling, I would conclude that the habeas court did not abuse its discretion in concluding that the State's OLS policy served a compelling governmental interest.

–21–

**2.      Narrowly Tailored**

Next, I analyze whether the evidence and the habeas court's findings of fact show that the OLS policy advancing that compelling governmental interest was narrowly tailored.  First, I look to whether the OLS policy is one that advances the State's humanitarian purpose to avoid re-victimizing trafficked individuals or depriving children of guardians—whether it is necessary.  The habeas court made the following express fact finding, which is summarized below, that shows the State's OLS policy was necessary:

- The charging decisions made by OLS law enforcement were done not with purposeful discrimination but to be able to immediately deal with the situation at hand during a state of emergency and disaster.

Also, the Governor's proclamation stated, in part, that:

- WHEREAS, the unabated influx of individuals resulting from federal government policies threatens to negatively impact state-licensed residential facilities, including those that serve Texas children in foster care.

- I . . . hereby certify that the ongoing surge of individuals unlawfully crossing the Texas–Mexico border poses an ongoing and imminent threat of widespread and severe . . . human trafficking. . . .

Further, the affidavit of DPS South Texas Regional Director Escalon stated, in part, that the OLS policy was necessary because there was an inability to distinguish between females who were trespassing from those being smuggled or trafficked by their male companions.

The habeas court made the following express fact findings, which are summarized below, that show the State's OLS policy was neither overly inclusive nor underinclusive:

- Rivera Saavedra's claims are based on the implementation of the Texas criminal trespass statute as it relates to the border counties and illegal immigration, not as it is implemented throughout Texas.

- When making that decision, consideration was given not only to sex but also to who was traveling with whom, i.e., the family situation, age, and children.

- The factors taken into consideration were not treated individually but as a composite of the factors relating to the specific person.

- Included in the factors taken into consideration was the availability of space permitted under jail standards and whether the offense was a felony or a misdemeanor.

- Both sexes were arrested under OLS from its inception.

- Both men and women were released to federal authorities as opposed to just women.

- The decisions made at the time of arrest were not based solely on sex.

The Governor's proclamation shows that the OLS policy was tailored by geography and limited to thirty-four border counties—Brewster, Brooks, Cameron, Crockett, Culberson, Dimmit, Duval, Edwards, El Paso, Goliad, Gonzales, Hidalgo, Hudspeth, Jeff Davis, Jim Hogg, Kenedy, Kinney, La Salle, Lavaca, Maverick, McMullen, Pecos, Presidio, Real, Reeves, Starr, Sutton, Terrell, Uvalde, Val Verde, Webb, Willacy, Zapata, and Zavala.

Captain Betancourt's testimony shows the policy was narrowed to not detaining females committing misdemeanor criminal trespass and those traveling in family units:

- He testified that if a misdemeanor crime is committed in his presence, he arrests the person.

- He stated that he has never been asked by a prosecutor not to arrest someone, either male or female.

- He stated that he does not agree that gender is used to determine whether a person will be charged.

- He testified that, for females arrested for smuggling, the officer calls the jail to see if there is space for a female and, if not, they will file an at-large case against her but, for females detained for misdemeanor trespass, they do not call the local holding facility to check for capacity.

- He stated that, due to the large numbers of males and females being arrested with no space to detain them, including females arrested for criminal trespass, DPS began filing at-large cases.

- He explained that an at-large case refers to the generation of a case report that includes the arrestee's identifying information and a probable cause affidavit which is submitted to the prosecutor's office.

Also, Captain Betancourt's email to DPS officers answering questions about the OLS policy provides examples of scenarios where females and children will not be detained but released to the Border Patrol. Also, in his testimony, Captain Betancourt explained that these examples were intended to clarify the "family dilemma" because his email does not provide any examples of encountering a woman by herself or with other females.

The State's OLS policy sought to protect victims of human trafficking and children. The habeas court's express findings show that the specific evidence in this case supported the habeas court's assessment that the State was not acting for improper discriminatory reasons, but to protect the female trespassers and children, doing so to the best of the State's ability with the resources available on that day.

In applying strict scrutiny, the Texas Court of Criminal Appeals has evaluated whether the government's action is narrowly tailored without analyzing whether it is the least restrictive alternative. *See, e.g.*, *Martinez v. State*, 323 S.W.3d 493, 505-07 (Tex. Crim. App. 2010). This evidence is similar to the types of tailoring the Texas Court of Criminal Appeals upheld in *Martinez*.

### 3. Least Restrictive Alternative

However, the Texas Supreme Court requires us to look at whether the policy is the *least* restrictive alternative.[11] *See Abbott v. Anti-Defamation League Austin, Sw., & Texoma Regions*, 610 S.W.3d 911, 919 (Tex. 2020) (per curiam). Under a strict-scrutiny review, the State had the burden to provide evidence showing that the OLS policy could be replaced by no other policy that could advance the State's humanitarian interest as well. *See In re McLean*, 725 S.W.2d at 698. While the record does contain evidence supporting the habeas court's findings that there was

---

[11] The Texas Supreme Court has explicitly interpreted the Texas Constitution to require that the policy is the least restrictive alternative. The Texas Court of Criminal Appeals has not directly addressed this issue. Given the lack of explicit precedent from the Texas Court of Criminal Appeals, I follow the clear guidance from the Texas Supreme Court.

no discriminatory purpose and that the government's objectives were compelling, it does not contain sufficient evidence to survive a strict-scrutiny review under the supreme court's requirement that the State prove that the policy was the least restrictive alternative and that it could be replaced by no other policy.

Accordingly, *Ex parte Aparicio*'s two-step test requires us to reverse the habeas court in this case, based on the specific record before us, and I therefore concur with that portion of the majority's opinion as I am bound to do by Rule 41.3.

## V. Conclusion

The habeas court concluded that Rivera Saavedra's claim of purposeful discrimination was rebutted. We are required to view the evidence in the record in the light most favorable to the habeas judge's ruling and must uphold that ruling absent an abuse of discretion. I would conclude that we are precluded from reversing the habeas court's order because evidence in the record supports the habeas court's ruling and because Rivera Saavedra has not challenged all independent grounds that fully support the habeas court's order.

However, *Ex parte Aparicio* requires us to evaluate this case under step three—whether the government justified a discriminatory policy. The record evidence supports the habeas court's findings, and Rivera Saavedra concedes, that the State's policy served a compelling governmental interest. However, the State did not provide specific evidence in this case proving that its policy was narrowly

tailored—that it was the least restrictive means of achieving its legitimate regulatory goals as required by the Texas Supreme Court.

Under the three-step test set forth in *Bell*, I would affirm the habeas court's order denying Rivera Saavedra's application for a writ of habeas corpus. However, because I am bound to follow *Ex parte Aparicio* and ensure that this transfer case will not produce a different outcome, I am required to concur in the judgment.

/Emily A. Miskel/
EMILY A. MISKEL
JUSTICE

Do Not Publish
Tex. R. App. P. 47
240216DF.U05